MICHAEL PHILBIN, Plaintiff-Appellant, *v.* THE CIVIL SERVICE COM-
MISSION OF COOK COUNTY *et al.,* Defendants-Appellees.

First District (3rd Division)    No. 78-287

Opinion filed November 29, 1978.

David P. Schippers, of Schippers, Betar, Lamendella & O'Brien, of Chicago,
for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Raymond J. Prosser, Assistant State's Attorneys, of counsel), for appellees.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiff, Michael Philbin, appeals from an order of the Circuit Court of Cook County, which affirmed the decision of the Civil Service Commission, removing him from his position as a Highway Engineer IV with the Cook County Department of Highways. The charges filed by the Cook County acting superintendent of highways alleged that Philbin failed to provide adequate and proper supervision of personnel under his jurisdiction, failed to institute sufficient standard practices and procedures to prevent employees under his direction and control from violating department guidelines and rules, and failed to delegate clear lines of supervisory authority for road crew personnel under his jurisdiction.

On December 16, 1976, a hearing was held before the Cook County Civil Service Commission. At the hearing, the charge concerning Philbin's failure to delegate clear lines of supervisory authority for road crew personnel was withdrawn. On December 20, 1976, over the objection of Philbin, the commission granted a motion to reopen the case to present additional evidence. Further evidence was heard on December 30, 1976. On February 24, 1977, the Civil Service Commission made the following findings:

"1. That the respondent failed to provide adequate and proper supervision of personnel under his jurisdiction.

2. That the respondent failed to institute sufficient practices and procedures to prevent employees under his direction and control from violating department guidelines and rules."

The commission ordered that Philbin be removed from his position as Highway Engineer IV, Cook County Department of Highways, and separated from the classified service of Cook County.

On April 12, 1977, Philbin filed a petition for a writ of certiorari with the Circuit Court of Cook County requesting review of the commission's decision. Philbin alleged that the decision was against the manifest weight of the evidence. The writ of certiorari was issued on July 20, 1977. On December 2, 1977, the trial court affirmed the decision of the commission in all respects. The court found that the decision was not without substantial foundation in evidence, was not arbitrary and was not an abuse of discretion.

On appeal Philbin raises two issues for review:

1. Whether the decision of the commission was supported by the manifest weight of the evidence.

2. Whether the discharge was an excessive penalty.

At the hearing before the commission in December 1976, Philbin and the commission stipulated that the rules covering personnel of the Highway

Department road crews prohibited stopping for personal shopping and coffee breaks during hours of employment. Testimony taken at the hearing, together with interviews which were stipulated into evidence, indicated that numerous departmental employees did take breaks during working hours.

The commission's key witnesses were two investigators for the Better Government Association of Chicago (BGA), William Recktenwald and Robert Weissbourd. Recktenwald testified that he observed men from the Highway Department on two occasions. On June 30, 1976, he followed a Cook County truck when it left the yard at 7:20 a.m. and shortly thereafter observed it pull into the parking lot of the Northfield Village Garage. The men in the truck then walked to the C.D. Snack Shop where they stayed until 8:12 a.m. Recktenwald stated that there were three men in the crew, but the only one that he saw working until 11:55 a.m., when he discontinued surveillance, was a man who drove a tractor and cut grass. The other men drove up and down a frontage road of the expressway at a low rate of speed and stopped at various places.

On July 27, 1976, he observed another truck with a three-man crew leave the yard at 8:30 a.m. The next time he saw the crew was at 11:30 a.m. when one of the men drove a tractor into the Northfield Village parking lot and then walked to the C.D. Snack Shop. At noontime the truck with the two other men pulled into the parking lot and both men went to a grocery store and shopped for 20 minutes before meeting with the driver of the tractor. At 12:55 p.m. all three got into the truck and drove at low speed along a number of roads before stopping at a snack shop. Two of the men went inside and remained there for about 20 minutes. Upon returning to the truck, they drove to a small shopping center where they spent about 25 minutes. They then stopped to examine a car which was for sale and then pulled into the Mandarin House Restaurant parking lot, where they stayed for 15 minutes. After leaving the restaurant, they traveled on roads not maintained by Cook County. Recktenwald stated that he did not observe the men doing any work.

The second investigator, Weissbourd, testified that he observed a truck leave the yards on July 22, 1976, and drive to a parking lot near Robert's Restaurant, where at least one man got out. The truck remained there about 5 minutes and then proceeded to Mr. B's Restaurant, where two men went in and one remained in the truck. The two men stayed in the restaurant for 15 or 20 minutes before dumping and leveling a load of gravel, which took about 40 minutes. They returned to the yard for another load of gravel and drove circuitously at low rates of speed before going to lunch. After lunch they dumped the load of gravel and drove "in a long loop" back to the facility. During the 6 hours he observed them, he saw them working about 2½ hours.

On cross-examination, Weissbourd admitted that he did not know whether the truck was assigned to patrol for potholes, but he stated he saw them pass potholes without stopping. He also testified that if their job was to ascertain whether the shoulder needed building up it would be necessary to go at a slow rate of speed. However, for the last 1½ hours of the day they did not have gravel to dump, even if they had found a low shoulder.

Several employees, who either testified at the hearing or whose interviews were stipulated into evidence, stated that they sometimes took coffee breaks; however, the breaks usually occurred before 7:30 a.m., when Philbin was still in his office doing paper work. The employees acknowledged that Philbin frequently warned them concerning coffee breaks and that he posted "no coffee breaks" across the front of their worksheets. Some employees testified that one of their duties was to patrol roads for potholes and debris which required them to drive at low rates of speed.

L. K. Crane, a civil engineer for the County Highway Department, testified that the radio logs for the road crews in district 2, under Philbin's supervision, were incomplete in some respects but were better than those of district one and were probably the best he had seen recently.

Michael Began, the general superintendent for the Rock Road Construction Company, testified for Philbin that during the months of July and August 1976, he had constantly seen Philbin at the Happ Road jobsite where he was in charge of the work and had occasion to talk with him every day. He testified that he had occasion to work with other superintendents, supervisors and district engineers in various governmental offices in all districts, and he characterized Philbin as the very best he worked with, stating he was highly qualified and diligent.

Joe Lyons, a supervisor under Philbin's immediate direction, testified that his duties were to supervise the men and prepare their assignments. He stated that everyone was notified about the rules regarding coffee breaks, and on August 23, 1976, there was a meeting at which all the employees were required to sign a document stating that coffee breaks were not permitted. Lyons testified that he had never observed anyone taking a coffee break; however, he had heard rumors that the men did. He also stated that at times the men appeared as if they were not working because they were waiting for materials. Lyons testified that he had worked for other district engineers and Philbin in comparison was "at the top" in his supervisory abilities.

Philbin testified that he was aware that the men might stop for coffee although he had no direct knowledge of any violations. He occasionally followed the trucks out in the morning; however, the men always appeared to recognize his car. Philbin testified that the work assignment

sheets carried admonishments against coffee breaks and stated that he took every action to insure that the rules were obeyed.

The Civil Service Commission specifically criticized Philbin for failure to take appropriate disciplinary action against Roland Rapisardi, a new employee who continually wanted to take coffee breaks. Philbin testified that he was in the process of having Rapisardi transferred out of his district when the foreman complained to Philbin concerning Rapisardi. Philbin testified that he reprimanded Rapisardi but took no further action since Rapisardi was being transferred. Philbin explained that if he had written another letter concerning Rapisardi, Rapisardi would have been fired.

I

■■ The first issue for review is whether the commission's findings were against the manifest weight of the evidence. In S & F Corp. v. Daley (1978), 59 Ill. App. 3d 1024, 1028-29, 376 N.E.2d 699, the court set forth the standards for review pursuant to a writ of certiorari. The court stated:

> "In reviewing the findings of a municipal agency pursuant to a common law writ of *certiorari* the court must determine whether the record contains any evidence which fairly tends to support the agency's findings. (*Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 324 N.E.2d 65.) The differences that at one time existed between common law and statutory *certiorari* have been all but obliterated. (See *Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 367 N.E.2d 1286; *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 338 N.E.2d 186.) In a proceeding pursuant to a common law writ of *certiorari* the reviewing court will not reweigh the evidence, and it may only set aside the agency's determination if it is palpably or manifestly against the weight of the evidence. (See *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 15, 338 N.E.2d 186, 188, quoting, *Superior Coal Co. v. O'Brien* (1943), 383 Ill. 394, 400-01, 50 N.E.2d 453, 457; *Nowicki v. Evanston Fair Housing Review Board* (1976), 39 Ill. App. 3d 109, 349 N.E.2d 596.)"

■■ In order to find that a decision is against the manifest weight of the evidence, the reviewing court must conclude that all reasonable and unbiased persons acting within the limits prescribed by law and drawing all inferences in support of the finding, would agree that the finding is erroneous. (*Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 349 N.E.2d 504. See also *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 378 N.E.2d 1160.) The commission's findings were that Philbin failed to provide adequate and proper supervision of personnel and that he failed to institute sufficient practices and procedures to prevent employees from violating department rules. The testimony of the BGA investigators

revealed that on three separate occasions, employees under Philbin's supervision made numerous stops at various restaurants and retail establishments during working hours. In addition, several employees testified that there was an abuse of the "no coffee break" rule by highway department personnel under Philbin's supervision. Philbin testified that he was aware that the men under his jurisdiction were taking coffee breaks. He did not, however, institute any effective procedures to gain compliance with the department's rules. In reviewing all the evidence, we do not find that the commission's conclusions were clearly erroneous and, therefore, cannot substitute our judgment for that of the commission. We affirm the circuit court's determination that the commission's findings were supported by the manifest weight of the evidence.

## II

■■ The second issue for review is whether the discharge of Philbin was an excessive penalty. This court has defined cause for dismissal as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good reason for his no longer holding his position. (*Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 340 N.E.2d 560. See also *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.) The determination of cause cannot be arbitrary and unreasonable. *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 189 N.E.2d 275.

■■ We do not find that the commission's decision to discharge Philbin was arbitrary or unreasonable. Although the record revealed that Philbin himself was a diligent worker, his responsibilities included the supervision of the highway department personnel. The evidence produced at the hearing revealed that the workers were flagrantly disobeying departmental rules. In addition, Philbin failed to establish any additional procedures to control the violations despite his awareness that posting the rules on worksheets and following the workmen in his automobile were unsuccessful tactics. It was not unreasonable for the commission to conclude that Philbin provided inadequate supervision and that the management and productivity of the department would be improved by dismissing Philbin. We find that the removal of Philbin from his position as highway engineer and his separation from the classified service of Cook County was not an excessive penalty.

For the foregoing reasons, the decision of the Circuit Court of Cook County is affirmed.

Affirmed.

McNAMARA and SIMON, JJ., concur.