THE VILLAGE OF HILLSIDE, Plaintiff-Appellant, *v.* JOHN SEXTON SAND & GRAVEL CORPORATION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 81—2655

Opinion filed March 31, 1983.

Schain, Burney & Kenny, of Chicago (Jerome S. Schain and Thomas R. Burney, of counsel), for appellant.

Mary E. Drake, of Maywood, for appellee Illinois Environmental Protection Agency.

Kirkland & Ellis, of Chicago (Daniel W. Vittum, Jr., Frank L. Winter, and Donald W. Rupert, of counsel), for other appellees.

JUSTICE MEJDA delivered the opinion of the court:

This appeal is from the trial court's order entered *nunc pro tunc* affirming the decision of the Illinois Environmental Protection Agency (Agency) to approve the issuance of certain permits to John Sexton Sand & Gravel Corporation (Sexton) and Browning-Ferris Industries, Inc. (Browning-Ferris), to operate a sanitary landfill at the Hillside Stone Quarry (Quarry), and denying declaratory, injunctive and *mandamus* relief sought generally in counts III, V and IX of plaintiff's fourth amended complaint. Plaintiff, village of Hillside (Village), a non-home-rule municipality,[1] here contends that: (1) the trial court erred in according the Agency's decision a presumption of validity; (2) the trial court's ruling on the land use and suitability of the Quarry as a sanitary landfill is against the manifest weight of the evidence; (3) the trial court's findings that Sexton had the requisite legal interest to obtain solid waste permits and site approval from the Agency, and that the Agency had authority to approve site location before Sexton obtained ownership of the Quarry, are against the manifest weight of the evidence; (4) the trial court's affirmance on *certiorari* of the Agency decision to issue sanitary landfill permits for the Quarry is against the manifest weight of the evidence; and (5) the trial court's denial of plaintiff's motion for preliminary and permanent injunctive relief is against the manifest weight of the evidence.

The Quarry which is the subject of these proceedings occupies ap-

[1]Under the applicable provisions of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1001 *et seq.*) in effect at the time of the instant litigation, the Environmental Protection Agency maintained exclusive jurisdiction over sanitary landfill siting within non-home-rule municipalities. (*Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 343 N.E.2d 493.) As amended by Pub. Act 82—682, section 39(c) of the Act now requires initial siting approval by local governmental authorities. (Ill. Rev. Stat. 1981, ch. 111½, par. 1039(c).) In determining the issues raised herein, we consider only the prior, unamended provisions of the Act, and note this recent amendment as a matter of reference only.

proximately 75 acres within the corporate limits of the Village and was formerly used to quarry limestone. It is located adjacent to the Mannheim Road-Eisenhower Expressway interchange and lies almost 10 miles west of downtown Chicago. The site contains an excavation covering about 62 acres to a depth of 300 to 350 feet, having a capacity of approximately 16 million cubic yards. About 14 acres of the property, located along Mannheim Road and Harrison Street, are at grade level. The site adjoins the Spector Freight Motor terminal to the north, Mannheim Road and commercial uses located in the village of Bellwood on the east, the Eisenhower Expressway on the south, and the Holiday Inn and Hillside Squares Theatre on the west. It has point-to-point contiguity with a single-family residential use on the northwest, less than 100 feet from the property line of the site. Beyond the Eisenhower Expressway to the south are located several industrial uses including the Allied Asphalt Plant, Seneca Oil, Chippewa Paper, the Illinois Department of Transportation maintenance yard and Hillside disposal. To the west of these uses is located a single-family subdivision in the village of Hillside and some commercial uses including a movie theatre.

Within a one-mile radius of the site, 49% of the land is put to residential use. The commercial and industrial uses comprise 11% and 14%, respectively, and public and semi-public land use comprise 18%. Two percent of the land is used for parks and 3% is vacant. The subject property accounts for 4% of the total land uses within this radius.

The population density in the immediate area is approximately 5,400 persons per square mile. The population living within approximately one mile of the property is in the range of 26,204 to 33,981 people. The population living within one ring of quarter sections adjacent to the quarter section where the property is located is 13,812 persons. That area includes persons living adjacent to the Quarry and a little beyond one-half mile from the property.

On May 7, 1979, Sexton and Browning-Ferris (hereinafter referred to as "private defendants"), doing business as Congress Development Company, a partnership engaged in the development and operation of sanitary landfills, signed a sales agreement with Commonwealth Edison Company (Edison) to purchase the Quarry. On May 23, 1979, Edison petitioned the Illinois Commerce Commission for approval of the sale. Approval was granted on July 16, 1980, and Edison conveyed title in fee simple to private defendants on July 24, 1980.[2] Earlier, on August 14, 1979, the Agency granted Sexton's

---

[2]The Illinois Commerce Commission's actions were the subject of an appeal before this court. *Village of Hillside v. Illinois Commerce Com.* (1982), 111 Ill. App. 3d 25, 443 N.E.2d 710.

permit application requesting that the Agency transfer to Sexton certain permits previously held by Edison permitting it to develop the Quarry as a clean landfill; *i.e.*, a dumping site for only inorganic matter.[3] Then, on August 15, 1979, the Agency issued to Sexton a supplemental permit allowing Sexton, subject to certain conditions, to modify the development of the site in accordance with the plans of its engineering firm. Finally, on July 18, 1979, Sexton requested an operating permit from the Agency, which was granted to private defendants on August 28, 1980 (No. 1975-57-OP) and which restricted operations of the site to the disposal of general municipal solid waste—excluding liquid, special and hazardous waste. Private defendants commenced a sanitary landfill operation at the Quarry under this permit on September 15, 1980.

Relevant to our consideration are counts III, V and IX of plaintiff's fourth amended complaint which generally seek declaratory, injunctive and *mandamus* relief. Count V seeks preliminary and permanent injunctive relief against Sexton and the Agency to prevent the continued operation of the sanitary landfill based on traditional principles applicable to land use and zoning decisions. It alleges that the sanitary landfill as proposed here is arbitrary, capricious and an abuse of discretion since it is not in conformity with the surrounding land uses, the trend of development and is contrary to the Village's comprehensive plan and its zoning ordinances. It further alleges that such a use will substantially depreciate the property values, and that the Agency's decision bears no relationship to the public health, safety and welfare of the Village. Counts III and IX seek injunctive or, in the alternative, *mandamus* relief alleging that the site location approval and transfer of permits by the Agency violated the rules of the Illinois Pollution Control Board (Board).

On November 12, 1980, following a hearing on plaintiff's motions for declaratory judgment, temporary restraining order and injunction based on various counts of its fourth amended complaint, the trial court found, *inter alia*, that all defendants were entitled to judgment on the issue of the Agency's procedure in permit decisions and the permit transfers; that the Village, as a non-home-rule municipality, was preempted from applying its zoning ordinance to the site; and that the Agency's decisions to transfer and issue permits were entitled to a presumption of validity. The trial court accordingly dis-

---

[3]The Agency's actions were the subject of an appeal before this court. *Village of Hillside v. John Sexton Sand & Gravel Corp.* (1982), 105 Ill. App. 3d 533, 434 N.E.2d 382.

missed with prejudice the counts in question, including counts III and IX, and denied the motion for a temporary restraining order. On January 9, 1981, the trial court entered an order—subsequently modified *nunc pro tunc* finding, *inter alia*, that its order of November 12, 1980, was correct.

A final judgment order entered October 2, 1981, later modified *nunc pro tunc*, addressed count V and other remaining counts, and also reconsidered the November 12, 1980, dismissal of counts III and IX. The trial court therein entered judgment in favor of all defendants on counts III, V (as amended), and IX, holding, *inter alia*, that the Agency's decision on site approval was entitled to a presumption of validity; that the Village had failed to establish that the Agency's decision bears no relationship to the public health, safety and welfare; that the evidence presented established the contrary; and that its prior dismissal of counts III and IX was correct. Accordingly, the trial court denied the Village's motion for reconsideration, its motions for preliminary and permanent injunction, and its petition for writ of *certiorari* based on the remaining counts of its complaint. Finally, an order *nunc pro tunc* modifying the October 2, 1981, final judgment order was entered on October 27, 1981. This order brought to the court's attention the existence of two additional sequential operating permits issued by the Agency to Sexton since the close of the proofs in the case. The trial court ruled in favor of all defendants on the Village's challenges to the issuance of those permits and any further operating permits issued by the Agency for the site.

### The Agency Hearings

The Agency hearings at issue commenced on June 12, 1979, and were concluded on July 10, 1979. Prior to these hearings, the hearing officer distributed to the parties a compilation of "Nine Issues" to be considered with respect to the 1979 Sexton supplemental permit application and permit transfer request. These issues address the following matters:

1. Adequacy of the engineering plan to protect environment;
2. Problems of scenic blight, damage to archaeological and historic sites or areas of natural beauty;
3. Hazards to public health and safety, offenses to the senses;
4. Compatibility with character of area;
5. Avoidance of substantial depreciation of nearby property;
6. Need for landfill at this location;
7. Avoidance of adverse effect on air and water quality;
8. Suitability for landfill purposes in terms of site location,

sources of solid waste, transportation loads, technical feasibility and·economic reasonableness; weight limits, if any, on access roads and bridges; and

9. Notification of municipal officials, local zoning boards and planning agencies, State legislators, adjacent landowners.

At the hearing, private defendants presented the testimony of Arthur A. Daniels, executive vice-president of Sexton, Richard W. Eldredge, a solid waste engineer, Kenneth H. Kastman, a soils engineer, E. L. Hardin, an expert in solid waste management systems, Paul C. Box, a traffic engineer, and Rolf C. Campbell and Richard B. Stern, urban land use planners. The Village presented Charles E. Clark, a solid waste engineer, and Thomas P. Dyke, an urban land planner. Anvan, Inc., the owner of the Hillside Holiday Inn, presented Herbert Smith, an officer of that company. William A. McCann, an appraiser, was permitted by the Agency to submit a written analysis of the effect of the proposed sanitary landfill on surrounding properties and the Village's appraisal expert, Theodore R. Kowalski, was afforded the opportunity to file a similar analysis, but none was filed.

Following the conclusion of the hearings, on August 14, 1979, the Agency approved the Quarry as a sanitary landfill site and transferred existing Edison permits to Sexton. On August 15, the Agency issued a supplemental development permit (No. 1979-1715) to Sexton allowing it, subject to certain specified conditions, to modify the development of the Quarry site in accordance with plans prepared by its engineer. Finally, on August 28, 1980, the Agency granted private defendants the operating permit for Phase I (No. 1975-57-OP) allowing them, subject to certain conditions, to operate a solid waste disposal site at the Quarry to handle general municipal solid waste—excluding liquid, special and hazardous waste. The existing permits authorize dumping operations at the Quarry up to a grade level.

By letter of August 18, 1980, the Village requested that certain conditions be imposed on the operating permit, including the right of the Village to inspect the operation daily to insure conformity with the Environmental Protection Act, the rules of the Pollution Control Board and the specific conditions of the development and operating permits issued for the Quarry. This request was denied, the Agency refusing to impose such requirements in the permits.

### The Trial Court Hearings

The Village instituted this lawsuit on September 14, 1979, and evidence was heard and received in the trial court commencing on February 19, 1981, and concluding on April 29, 1981. The hearings corre-

sponded to the two tasks before the trial court.

First, the trial court received and reviewed, by way of *certiorari*, the entire record of the Agency's proceedings for review of the Agency's issuance of the permits for the sanitary landfill site. Second, the trial court received supplemental testimony relevant to the Village's complaint for declaratory and injunctive relief. The evidence presented is rather voluminous, consisting of numerous exhibits and substantial expert opinion testimony and will not be fully summarized here. For purposes of our determination, the following evidentiary summary is provided while additional evidence is incorporated in the opinion below as necessary.

The evidentiary record contains substantial testimony regarding the character of the area surrounding the Quarry site and its historical development, which basically is undisputed. The contested issues evolve essentially from the contradictory opinion evidence presented by the Village and private defendants regarding the impact of the sanitary landfill operation on the surrounding area. On these matters the Village presented an expert in land planning, Thomas Dyke, an expert in real estate appraisal, Francis S. Lorenz, Jr., and an expert in urban sciences, Pierre de Vise. Generally, their collective opinion was that the proposed sanitary landfill operation is not the highest and best use of the Quarry site; that its operation would adversely affect real estate values within a proximity to the site; and that the Village and its environs would experience a negative socio-economic impact if the sanitary landfill operation were permitted to continue. The private defendants presented testimony by an expert in land planning, Richard Stein, and by an expert in real estate appraisal, William McCann. Their opinion testimony was that the highest and best use of the property was for a sanitary landfill, and then ultimately for recreational and industrial pursuits; that the sanitary landfill is the only way to return to the site a future, economic, viable and productive use to the community within 10 to 12 years; and that such a use will have no reasonable or ascertainable impact on the use, value or marketability of surrounding commercial, industrial and residential properties. Also presented were testimony and exhibits relating to other sanitary landfills and their environs—the Village submitting testimony and land use exhibits on nine sites, Maryville, Richton Park, Blue Island, Lansing, Mallard Lake, Techney, Greene Valley, Summit and Calumet Industrial Districts, and private defendants introducing evidence of four additional sites, Oak Brook-Westchester, Barrington, Lake Bluff and Winnetka. After the parties submitted briefs and presented oral argument, the trial court upheld the Agency's decision and found in favor of the

Agency and private defendants and against the Village on its complaint for injunctive and declaratory relief, and this appeal followed.

OPINION

■ Plaintiff initially contends that the trial court erred in according the Agency decision the "presumption of validity." In its final order of November 12, 1982, the trial court found that: "F. The Agency decisions issuing and transferring permits *** are entitled to a presumption of validity which may only be overcome by clear and convincing evidence ***." This order was affirmed by this court in *Village of Hillside v. John Sexton Sand & Gravel Corp.* (1982), 105 Ill. App. 3d 533, 434 N.E.2d 382; however, in that appeal plaintiff chose not to argue this point. Under the rule that no question raised or which could have been raised in a prior appeal on the merits can be urged on a subsequent appeal (see *Kazubowski v. Kazubowski* (1970), 45 Ill. 2d 405, 259 N.E.2d 282; *Turner v. Commonwealth Edison Co.* (1978), 63 Ill. App. 3d 693, 380 N.E.2d 477), we deem this question waived. We note parenthetically, however, that our courts have consistently adhered to the rule that an administrative agency is entitled to a presumption that all of its official acts have been performed properly and that this presumption extends to a reading and consideration of the evidence. *E.g., Des Plaines Currency Exchange, Inc. v. Knight* (1963), 29 Ill. 2d 244, 194 N.E.2d 89, *cert. denied* (1964), 376 U.S. 969, 12 L. Ed. 2d 84, 84 S. Ct. 1136; *Watra, Inc. v. License Appeal Com.* (1979), 71 Ill. App. 3d 596, 390 N.E.2d 102.

Next, the plaintiff seeks reversal of the trial court's denial of preliminary and permanent injunctive relief sought in its complaint, arguing that the proposed use of the Quarry for a sanitary landfill is unreasonable, it is not the highest and best use of the property, and it is unrelated to the health, safety and welfare of the public. Plaintiff further contends that the evidence establishes that the proposed use is not compatible with and beneficial to the surrounding area; that there will be a substantial effect on nearby property values; that such use is contrary to the Village zoning ordinance; and finally, that the trial court's findings are contrary to the manifest weight of the evidence.

■ The parties agree that the instant case presents issues parallel to those considered in cases challenging zoning ordinances, and therefore that the standards for review and the factors for consideration of the challenge to the Agency's decision to issue permits for the Quarry site are those announced in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65, and repeatedly followed by Illinois courts. (See generally *La Salle National Bank v. City of Park Ridge* (1979), 74 Ill. App. 3d 647, 393 N.E.2d 623.) The parties also agree that

the Agency's decision is, in effect, a decision to "rezone" the property in question. As indicated in *La Salle National Bank v. County of Cook*, "A zoning ordinance is presumptively valid [citation], this presumption may be overcome only by clear and convincing evidence [citation], and the burden of proof is on the plaintiff." (12 Ill. 2d 40, 46, 145 N.E.2d 65, 69.) If, however, plaintiff shows that the Agency ordinance bears no relationship to the public health, safety and welfare, the ordinance is void. (*La Salle National Bank v. County of Cook.*) We believe that these principles apply to the review of the Agency decision here, and therefore that it was the burden of the Village to show by clear and convincing evidence that the Agency's decision was unreasonable.

In reviewing the evidence, we note that six factors have been considered particularly relevant to reviewing the validity of zoning ordinances. As listed in *La Salle National Bank v. County of Cook*, these factors are: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned. (12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69.) No one factor is controlling, and the validity of each zoning ordinance must be determined on its own facts and circumstances. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69.

■ The criteria used by the Agency in determining the issue of land use and site suitability here are set forth in the "Nine Issues" summarized in the facts above. We find that these nine issues embody, at least, the traditional zoning criteria as prescribed in *La Salle National Bank v. County of Cook*, as well as the general purpose stated in section 20 of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1020). Thus, we need not decide further whether the standards applied by the Agency were appropriate, but rather whether plaintiff has met its burden of proving in the trial court that the Agency decision has no reasonable relationship to the public good.

As noted, much evidence was heard concerning the character of the Quarry, the make-up of the surrounding neighborhood, the highest and best uses of the land, the effect on valuations, the existing zoning and uses of nearby property, the suitability of the site for a sanitary landfill, pollution, vectors, etc. Each side presented expert opinion testimony sustaining its contentions and resulting in substantial difference of opinion. After examining the record we are satisfied that the

trial court was justified in its conclusions. We are mindful of the conflict of testimony that a case of this nature and import naturally generates. However, we are ultimately bound by the rule that when testimony is contradictory in a trial without a jury, the weight to be accorded testimony is a matter to be determined by the trial court and its findings will not be disturbed unless clearly against the manifest weight of the evidence. (See, *e.g., La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48, 145 N.E.2d 65, 70.) We find the trial court's findings on the land use and suitability of the Quarry as a sanitary landfill are supported by the evidence. Accordingly, we will not disturb them on review.

Next, the plaintiff urges this court to declare that Sexton lacked the requisite legal standing to apply for the transfer of landfill permits previously held by Edison since such application could only be made by the owner and operator of the site. Pollution Control Board Solid Waste Rule 205(d); see *Village of Hillside v. Illinois Commerce Com.* (1982), 111 Ill. App. 3d 25, 443 N.E.2d 710.

Solid Waste Rule 205(d) requires that:

> "All permit applications shall be signed by the owner and operator of the solid waste management site or their duly authorized agents ***."

Rule 104(*l*) defines operator as: "a person who owns, leases, or manages a solid waste management facility."

In its brief before this court, the Agency argues that Sexton was, indeed, managing the site under its authority to "commence development" of the site, and therefore qualified as an operator under the above definition. Similarly, Sexton points to the prospective nature of the permits in question, arguing that they relate specifically to the development phase and were issued to Sexton pursuant to its rights as a contract purchaser of the property. (See *Western Pride Builders, Inc. v. City of Berwyn* (1968), 99 Ill. App. 2d 250, 240 N.E.2d 269.) We find it unnecessary to review further the arguments presented challenging Sexton's standing to apply for and receive transfer of Edison's permits, or the new supplemental development permit. The issue of Sexton's standing was not raised by objection before the Agency hearings, and we hold, therefore, that plaintiff has waived this issue. A defense not presented in the administrative hearing may not be raised in the court on review or upon appeal. (*Robert S. Abbott Publishing Co. v. Annunzio* (1953), 414 Ill. 559, 112 N.E.2d 101; *Environmental Protection Agency v. Pollution Control Board* (1976), 37 Ill. App. 3d 519, 346 N.E.2d 427; *Gordon v. Department of Registration & Education* (1970), 130 Ill. App. 2d 435, 264 N.E.2d 792.) This rule is based on the

requirement of orderly procedure and the justice of holding a party to the results of his own conduct where otherwise a party would surprise his opponent and deprive him of an opportunity to contest the issue in the administrative hearing. (*Robert S. Abbott Publishing Co.*) Plaintiff argues that the waiver rule utilized in the above-cited cases applies only to administrative review proceedings and not to *de novo* declaratory judgment proceedings. We consider the above tenets to be equally applicable in the circumstances of the instant case, and we see no useful purpose served by the distinction suggested by plaintiff. Indeed, the instant complaint was in a significant respect, a petition for writ of *certiorari* to review the Agency's decision to issue the sanitary landfill permits. The distinction between administrative review and a review pursuant to the common law writ of *certiorari* have all but disappeared in our State. (*Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 367 N.E.2d 1286.) The declaratory relief herein sought so closely resembles an administrative review of the Agency proceedings that we determine that the waiver rule is particularly appropriate in the interests of justice and orderly procedure.

■ Finally, plaintiff seeks review of the Agency decisions pursuant to a common law writ of *certiorari*. Such a review is limited to our determination of whether the record contains any evidence which fairly tends to support the Agency's findings. (*S & F Corp. v. Daley* (1978), 59 Ill. App. 3d 1024, 376 N.E.2d 699; *Philbin v. Civil Service Com.* (1978), 66 Ill. App. 3d 772, 384 N.E.2d 145.) Plaintiff, however, has failed to provide a report of the Agency proceedings on appeal as required by Supreme Court Rule 323(a) (73 Ill. 2d Rd. 323(a)). In the absence of a record sufficient to establish the error urged on review, a reviewing court will indulge in every presumption favorable to the judgment or order appealed from. (*Schranz v. I. L. Grossman, Inc.* (1980), 90 Ill. App. 3d 507, 412 N.E.2d 1378.) Without benefit of the Agency record, we cannot say that the Agency's decision is not supported by the evidence. Accordingly, we will assume that the evidence presented at the hearing supports the trial court's ultimate disposition of plaintiff's petition for *certiorari* review.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

WILSON, P.J., and SULLIVAN, J., concur.