GERALD S. REED *et al.*, a Partnership, d/b/a Reed, Heller & Mansfield, Plaintiffs-Appellees, v. RUTH HOLDER, Defendant-Appellant.

Fifth District No. 5—89—0100

Opinion filed July 30, 1990.

Sharon S. Costa, of Costa & McHaney, of Mt. Vernon, for appellant.

Edward J. Heller, of Reed, Heller & Mansfield, of Murphysboro, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Legal services were rendered on behalf of Ruth Holder by Gerald Reed and the partnership of which he is a member, Reed, Heller & Mansfield. To secure payment of the court costs and attorney fees incurred by Holder, Reed prepared a promissory note which was executed by Holder on September 1, 1983, at Reed's office. That note reads:

"PROMISSORY NOTE

$17,056.25 Pinckneyville, Illinois July 27, 1983

For legal services and out-of-pocket expenses, I Ruth Holder promise to pay to the Order of Reed, Heller & Mansfield, the sum due as of July 27, 1983 of FOURTEEN THOUSAND NINE HUNDRED FORTY FIVE DOLLARS AND SIXTY CENTS ($14,945.60) for attorneys fees accrued, plus such additional amounts as may accrue thereafter, and the additional sum of TWO THOUSAND ONE HUNDRED TEN DOLLARS AND SIXTY FIVE CENTS ($2,110.65) for out-of-pocket expenses at an interest rate thereof of TEN PER CENT (10%) per annum calculated against unpaid principal, as soon as practical, but no later than the date of sale of any real estate awarded to me as part of the Judgement of Dissolution of Marriage from Joseph Holder.

I further promise that my Oxbow residence home shall either be placed on the market immediately, or if an appeal is taken on the property division, as soon as possible after the appeal is determined, and I will take all reasonable necessary steps to sell said property. Should I elect not to sell said property, the entire amount shall be immediately due and payable.

RUTH HOLDER"

While not disputing the execution of the note, Holder does dispute that interest is owed on the attorney fees. Holder contends that the

note clearly shows that interest is due only as to out-of-pocket expenses.

On May 3, 1988, $18,041.95 was paid on the note. On September 16, 1988, the partnership of Reed, Heller & Mansfield filed a complaint against Ruth Holder, claiming the balance due on the promissory note, $7,411.48, plus interest from and after the date the complaint was filed. Following a bench trial, judgment was entered in favor of the plaintiffs, and the court found that: (1) Ruth Holder executed the promissory note on September 1, 1983, promising to pay the principal of $17,056.25 plus interest from and after July 27, 1983, at the rate of 10% per annum; (2) the only payment made on the note was on May 3, 1988, in the sum of $18,041.95; (3) the note is clear on its face and not ambiguous; and (4) plaintiff is entitled to judgment in the sum of $7,642.07, plus costs.

Ruth Holder appeals, contesting only that provision of the judgment awarding interest on the attorney fees due under the promissory note. She argues that the clear language of the note supports her position that no interest is owed on the attorney fees. In the alternative, Holder argues that the note is ambiguous and, therefore, the note should be construed in her favor.

 The terms of a note must be determined in accordance with the intention of the parties when that can be ascertained from the language used. (*Wheeling Trust & Savings Bank v. Citizens National Bank* (1986), 142 Ill. App. 3d 333, 336, 491 N.E.2d 866, 869.) Parol evidence is otherwise inadmissible to vary or contradict the clear written provisions of an integrated contract. (*Main Bank v. Baker* (1981), 86 Ill. 2d 188, 199, 427 N.E.2d 94, 98-99.) In the absence of ambiguous language, there is no legal basis to support a judicial reformation of the note. (See *Lustgarten v. First Federal Savings & Loan Association* (1963), 42 Ill. App. 2d 86, 191 N.E.2d 434.) In the case at bar, we believe, as did the trial court, that the language of the promissory note is plain and its terms unambiguous.

The critical provision of the note here is that which reads:

> "For legal services and out-of-pocket expenses, I Ruth Holder promise to pay *** ($14,945.60) for attorneys fees accrued, plus such additional amounts as may accrue thereafter, and the additional sum of *** ($2,110.65) for out-of-pocket expenses at an interest rate thereof of TEN PER CENT (10%) per annum *** ."

Holder argues that the language regarding attorney fees is separated by a comma, differentiating attorney fees from out-of-pocket expenses and the interest rate, both of which are referred to in a

phrase uninterrupted by commas. Plaintiff reasons that the note distinguishes between the amount of attorney fees and the amount of costs to designate which sum is interest free and which is not.

■ Defendant's reliance on the placement of a single comma in support of her position, while creative, is illogical when the language of the promissory note is considered in its entirety. The cardinal rule of construction is to give effect to the intention of the parties as expressed by the language of the entire instrument. (*In re Estate of Feldman* (1944), 387 Ill. 568, 574, 56 N.E.2d 405, 407.) The first line of the body of the note, "for legal services and out-of-pocket expenses," refers to the principal sum due. We cannot presume, as defendant suggests, that the delineation between the principal amount owed for attorney fees and the principal amount owed for costs is made to differentiate between an interest-bearing sum and a non-interest-bearing amount. The recitation of the amount owed for attorney fees and then out-of-pocket expenses clearly relates back to the first phrase of the note, "for legal services and out-of-pocket expenses," advising the reader what consideration was given for execution of the note. We find it significant that in the upper corner of the note, the principal sum of $17,056.25 is typewritten. If we were to interpret the note as defendant does, the $17,056.25 sum in the upper corner of the note would have no meaning in calculating the amount due under the note. Reading the typewritten $17,056.25 in conjunction with the two sums representing the amounts owed for attorney fees and costs, we find that the designation of the two sums was made to establish the sums that were used to calculate the total principal.

■ Defendant further submits that the extrinsic evidence admitted at trial as to the conduct of the parties with regard to the note supports her position. In determining the meaning of a contract, a court may consider the conduct of the parties. (*Mendelson v. Flaxman* (1975), 32 Ill. App. 3d 644, 647, 336 N.E.2d 316, 319.) Contrary to defendant's conclusion, a review of the testimony adduced at trial supports the trial court's finding that the intent of the parties was to apply interest to both attorney fees and out-of-pocket expenses.

There was admitted into evidence correspondence from Holder's attorney, Kathleen Moran, dated February 29, 1988. This letter made reference to a potential sale of Holder's residence, with an anticipated closing date of April 1, 1988. The letter also stated in pertinent part:

> "I calculated out the attorney's fees, costs, and interest and came up with a figure of $18,041.95.

| | |
|---|---|
| Attorney's Fees | 14,945.60 |
| Costs | 2,110.65 |
| Interest on Costs | 986.35 |
| | $18,041.95 |

If you calculate out the figure and it comes to a different amount then [sic] what I have calculated, please let me know immediately."

Gerald Reed's letter in reply, dated March 3, 1988, stated:

"I am in receipt of your February 29, 1988, correspondence. I have no problems with the figures that you set out in that letter. I am cautiously optimistic that this matter may settle."

Defendant contends that these letters evidence that the parties intended to apply interest only to costs.

Ruth Holder testified that when she executed the note, Gerald Reed explained to her that interest would be charged only on the out-of-pocket expenses. Holder's attorney testified that it was not until she prepared the closing statements on the sale of Holder's residence that she realized there was a dispute over the terms of the note. The calculations in her letter of February 29, 1988, were made after discussing the terms of the note with Ruth Holder. Holder's attorney testified that she had had a prior discussion with Reed wherein Holder's interpretation of the note was mentioned, and Reed did not at that time deny such interpretation. She did testify, however, that approximately one year prior to the sale of the Holder residence she spoke with Reed and asked if he would be willing to cut his fee in an attempt to get Ruth Holder to refinance so that Reed could get paid. Reed told her at that time, that in that context he would be willing to waive the interest, but that he really did not want to cut his fee.

Gerald Reed testified that he spoke with Kathleen Moran in the spring of 1987 about a possible compromise to settle the payment due on the note. While no agreement was reached at that time, Reed stated that during that conversation he verbally denied that Holder's interpretation of the note as precluding interest on fees was accurate. He testified that in February of 1988, he once again discussed with Moran a possible waiver of the interest due, premised on the condition that closing occur on or before April 1, 1988.

Reed further testified that the context of the February 29, 1988, letter and his response thereto was towards compromising the balance due on the note. Reed explained that there was an agreement to compromise the amount due on the note in the spring of 1988,

which required payment by April 1, 1988, to be effective. He testified, "In February, 1988, I received a phone call from Kathleen Moran, indicating that there was a possible buyer *** inquired if I would be willing to settle for less at that time *** I said, when is the closing? And she said, we are shooting for April 1st *** I got back with her and said, if you can close by April 1st, we will waive interest on the principal." Reed continued, "Payment was not made by April 1, 1988, and that agreement was not placed in effect and the full amount due under the note remained due and owing."

■ When testimony is contradictory in a trial without a jury, the weight to be accorded testimony is a matter to be determined by the trial court, and its findings will not be disturbed unless clearly against the manifest weight of the evidence. (*Village of Hillside v. John Sexton Sand & Gravel Corp.* (1983), 113 Ill. App. 3d 807, 816, 447 N.E.2d 1047, 1053.) Here, the trial judge heard evidence on the intent of the parties and their conduct with regard to the promissory note. After reviewing the record, we are of the opinion that there was sufficient evidence to support his finding that the note in question was intended to bear interest on both attorney fees and out-of-pocket expenses.

In light of the foregoing, we affirm the judgment of the trial court.

Affirmed.

LEWIS, P.J., and RARICK, J., concur.