DARIO LEBAJO, Plaintiff-Appellant, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—88—2722

Opinion filed February 19, 1991, *nunc pro tunc* October 23, 1990.

Wildman, Harrold, Allen & Dixon, of Chicago, for appellant.

Roland Burris, Attorney General, of Springfield, for appellees.

JUSTICE BILANDIC delivered the opinion of the court:

In an administrative review action, the trial court affirmed the order of the Illinois Department of Public Aid (IDPA or Department) terminating plaintiff, Dario Lebajo, M.D., from participating in the medical assistance program and ordering plaintiff to repay the IDPA the sum of $15,118.11. Plaintiff appeals. Ill. Rev. Stat. 1987, ch. 110, par. 3—112.

On appeal, plaintiff contends that: (1) the trial court erred in striking a portion of his reply memorandum; (2) the trial court erred in affirming the IDPA's decision to terminate plaintiff as a participant in the medical assistance program; (3) the trial court erred in affirming the IDPA's decision to recover from plaintiff $15,118.11 in overpayments; and (4) the trial court erred in refusing to order production of documents used by an IDPA witness to refresh her recollection.

The relevant facts of the instant action are undisputed. On September 13, 1983, plaintiff applied to participate in the IDPA's medical assistance program. As a participant in this program, plaintiff agreed

to dispense medical care to public aid recipients and receive payment from the State for medical services rendered. As a condition of participation, plaintiff was required to keep accurate patient records and bill for his professional services within the limits of a fee schedule.

Plaintiff was employed by Enbeef Health Associates (Enbeef), a group medical practice whose employees were all participants in the medical assistance program. Pursuant to an agreement between Enbeef and plaintiff, plaintiff executed an IDPA "Power of Attorney" form, which authorized Noemi N. Borrillo, M.D., a principal of Enbeef, to bill the IDPA in plaintiff's name for patient services rendered individually by plaintiff. Plaintiff also assigned Enbeef his right to receive payment from the IDPA for medical services rendered by plaintiff and billed in his name. Plaintiff notified the IDPA of this agreement by signing the Department's "Professional Practice as Alternate Payee" form, which designated Enbeef as the payee for medical services rendered by plaintiff.

Plaintiff began working at Enbeef on September 16, 1983, and resigned from Enbeef two months later, on November 19, 1983. During his employment with Enbeef, plaintiff gave medical care to 553 patients and Enbeef billed and received payments from the IDPA for these medical services rendered by plaintiff. Shortly before his resignation from Enbeef, on November 4, 1983, plaintiff terminated his arrangement with Enbeef by notifying the IDPA, in writing, that the power of attorney he granted to Enbeef was revoked. When plaintiff left the employ of Enbeef, he did not take any patient records with him, nor did he maintain his own private records.

On December 6, 1984, the IDPA notified plaintiff that he had been selected for an audit of the records of the 553 patients he treated during his employment with Enbeef. Plaintiff was notified that he was required to submit 344 patient records to the Department auditors. Pursuant to Department policy, the auditors would examine the 344 produced records for billing discrepancies and then extrapolate this amount over the entire 553 patient record universe. Plaintiff informed the auditors that he left the requested records with Enbeef upon termination of his employment there.

Plaintiff did not produce any of the 344 requested records to the IDPA. The auditors maintained that it was plaintiff's responsibility to maintain and produce the records and, therefore, made no attempts to gain access to the records from Enbeef.

Ms. Little, the Department auditor, conducted the first audit without any of the requested records. Since no records were produced to substantiate the services billed to the Department, the De-

partment sought to recover the total amount paid for services rendered by plaintiff during the audit period. Pursuant to the first audit, the IDPA sought to recover from plaintiff $15,932 in overpayments.

Plaintiff requested an administrative hearing on the Department's determination. At that hearing, held on August 14, 1985, plaintiff's counsel appeared before the hearing officer and tendered 64 of the requested records to the Department. Plaintiff's counsel further requested the hearing officer to issue subpoenas to Enbeef for the remainder of the records. Over the objection of the Department, the hearing officer issued the subpoenas and set a return date of October 24, 1985.

The subpoenas were served on September 30, 1985. On October 24, 1985, the parties appeared before the hearing officer to receive the subpoenaed records from Enbeef. However, none of the parties subpoenaed appeared at the hearing and no records were tendered pursuant to the subpoenas. At this hearing, plaintiff's counsel announced that he would pursue enforcement of the administrative subpoenas through the circuit court of Cook County. The administrative hearing was continued to December 5, 1985.

Meanwhile, Ms. Little, the Department auditor, conducted a re-audit utilizing only the 64 records tendered by plaintiff's counsel at the August 14 administrative hearing. The re-audit disclosed that out of the 344 records requested, plaintiff failed to produce 280 records. Because plaintiff failed to substantiate these billings with any records, the Department sought to recover the full amount paid in these 280 instances. The re-audit further disclosed that the 64 records produced contained 18 instances of failure to specify services rendered for which billings were made and 26 instances of misuse of procedure billing codes. The auditors then took the total dollar discrepancy between the audited sample of records and the total services paid and extrapolated this sum over the universe of 553 records. The re-audit disclosed a total discrepancy of $15,118.11, for which the IDPA sought repayment from plaintiff.

The administrative hearing was resumed on December 5, 1985. Between October 24, 1985, and the resumption of the administrative hearing on December 5, 1985, plaintiff did not attempt to enforce the administrative subpoenas in the circuit court. Plaintiff did not offer any explanation for his inaction.

At the hearing, the IDPA presented the testimony of auditor Little, who testified to the procedure and the results of the re-audit. Ms. Little testified that she refreshed her recollection for her testimony with certain notes taken by her during two interviews with

plaintiff. Plaintiff requested that the IDPA produce these documents, which the hearing officer denied.

On March 12, 1986, the IDPA issued a final administrative decision finding that plaintiff, as a participant in the medical assistance program, had breached his duty to the Department to maintain and produce patient records in 280 instances. The IDPA terminated plaintiff as an IDPA medical vendor and ordered plaintiff to repay the IDPA the sum of $15,118.11.

Plaintiff filed a timely complaint for administrative review in the circuit court of Cook County. The trial court granted the IDPA's motion to strike a portion of plaintiff's reply memorandum for plaintiff's failure to raise the argument at the administrative hearing or in his initial memorandum submitted to the trial court. The trial court affirmed the decision of the IDPA terminating plaintiff as a medical vendor and entered a monetary judgment against plaintiff in the amount of $15,118.11. Plaintiff appeals.

I

Plaintiff argues that the trial court erred in striking an argument contained in his reply memorandum. The argument asserted that the Department's "Professional Practice as Alternate Payee" form established separate rules regarding maintenance of medical records for participants in the Department's "alternate payee system."

■ The law in Illinois is well established that, if an argument is not presented in an administrative hearing, it is waived and may not be raised for the first time before the trial court on administrative review. (*Village of Hillside v. John Sexton Sand & Gravel Corp.* (1983), 113 Ill. App. 3d 807, 447 N.E.2d 1047.) The rule is particularly applicable where, as here, the issue is one of construction or interpretation of the statutes and rules that most directly concern the agency's operations. *Skale v. Department of Public Aid* (1987), 165 Ill. App. 3d 776, 780, 520 N.E.2d 749.

■ After careful review of the record of the administrative hearing and plaintiff's initial memorandum submitted to the trial court, we find that nowhere did plaintiff make the argument stricken by the trial court from plaintiff's reply memorandum. Therefore, plaintiff waived that argument. Accordingly, we find that the trial court properly struck the argument contained in plaintiff's reply memorandum.

II

Plaintiff's next assignment of error is that the trial court erred

in affirming the IDPA's decision to terminate his participation as a dispenser of medical services in the medical assistance program. Plaintiff argues that, in the context of a group practice, it is the group practice, not the individual practitioner, that has the duty to maintain and provide records to the IDPA.

■ With the enactment of the Illinois Public Aid Code (Code), the legislature enabled individuals such as plaintiff to participate in the medical assistance program. (Ill. Rev. Stat. 1987, ch. 23, par. 5—1 *et seq.*) Section 5—5 of the Illinois Public Aid Code sets forth the individual participant's duty to maintain patient records:

> "All dispensers of medical services shall be required to maintain and retain business and professional records sufficient to fully and accurately document the nature, scope, details and receipt of the health care provided to persons eligible for medical assistance under this Code, in accordance with regulations promulgated by the Illinois Department." Ill. Rev. Stat. 1987, ch. 23, par. 5—5.

■ Plaintiff has the legal duty to maintain these records, and nothing contained in this Code relieves plaintiff of or modifies this duty. It has been held that this statutory provision gives participants in the medical assistance program, such as plaintiff, notice of their duty to meet minimal professional recordkeeping standards. *Boffa v. Department of Public Aid* (1988), 168 Ill. App. 3d 139, 144, 522 N.E.2d 644.

The individual participant is also made aware of this duty in the Handbook for Physicians, which is given to medical dispensers upon acceptance into the medical assistance program. Upon receipt of the handbook, the individual participant is put on notice that he retains the ultimate responsibility to maintain and provide the IDPA with patient records upon its request. See *Skale v. Department of Public Aid* (1987), 165 Ill. App. 3d 776, 520 N.E.2d 749 (IDPA decision to terminate medical dispenser upheld for failure to produce records where the records are in the hands of a third party).

Additionally, plaintiff signed the Department "Professional Practice as Alternate Payee" form, which provides in part:

> "4) The practitioner will be responsible for making available to the Department of Public Aid such records as are necessary to disclose fully the extent of the services provided to public aid recipients.
>
>           * * *
>
> 7) The practitioner retains full responsibility for any bills submitted in his name to the Department of Public Aid even

though the group practice has been designated as alternate payee. This responsibility includes liability to repay any overpayments made by the Department."

While paragraphs 3, 5 and 6 of this form may cause confusion,[1] we find that paragraphs 4 and 7 unequivocally set forth the individual participant's duty regarding the maintenance of patient records. The ultimate responsibility to provide the IDPA with patient medical and billing records cannot be avoided by the individual participant merely because the IDPA permits restricted assignment of some of the participant's duties.

This conclusion is particularly compelling in light of the public policy involved in the medical assistance program. Individual doctors apply for and are accepted into this program, which provides medical services to people who are unable to afford medical care. The doctors are paid for their services with the taxpayers' money. As a condition of participation in this program, the individual participant is required to maintain and provide the IDPA with patient records upon request. A participant's failure to comply with the requirement to maintain and produce records would result in the inability to verify the participant's billings and payments for services rendered, with the ultimate result of misuse of taxpayers' money.

■ Under the facts of this case, we find that plaintiff failed to even put forth reasonable efforts to fulfill his duty to provide the IDPA with the requested records. At plaintiff's request, the hearing officer issued a subpoena for the records. Plaintiff was granted a continuance to seek enforcement of the administrative subpoenas in the circuit court. Such relief is available in the circuit court. (See *Department of Public Aid v. Kessler* (1979), 72 Ill. App. 3d 802, 391 N.E.2d 160.) Yet, at no time did plaintiff even attempt to seek their enforcement, nor did he offer any explanation for his inaction. Instead, plaintiff chose to remain idle and then contend on appeal that he was unable to obtain the records because they were in the possession of Enbeef. To permit plaintiff to now argue on appeal that he was relieved of his duty to provide the IDPA with records in the possession of Enbeef would create a potential avenue for abuse of the medical assistance program.

---

[1] It would be advisable for the Department to review its standard forms to more clearly reflect the intent and purpose of the Illinois Public Aid Code and the rules and regulations adopted pursuant thereto in order to expedite the audit procedure and avoid delay in obtaining relevant records from practitioners or professional entities with which they are associated.

■ We therefore conclude that the provisions of the Illinois Public Aid Code and the rules and regulations adopted pursuant thereto place upon the individual practitioner the ultimate responsibility to maintain and produce patient records to the IDPA. Plaintiff has failed to comply. It is not a defense to allege that his legal responsibility has been delegated to a third party. The Code does not permit such conduct. The order to terminate plaintiff as a participant in the medical assistance program is correct.

### III

Plaintiff makes a number of contentions regarding the propriety of the trial court's order affirming the IDPA's decision to recover $15,118.11 from plaintiff.

■ Plaintiff's principal contention is that "recovery" from him is improper because payment was, in fact, made to Enbeef. This argument is misplaced. Plaintiff is permitted to assign the money paid by the IDPA for his medical services to whomever he wishes. This does not alter the fact that, under the statutory scheme of the medical assistance program, the individual participant bears the ultimate responsibility to maintain and provide the IDPA with patient records. If the individual practitioner is unable to provide adequate records to substantiate his claims for and receipt of taxpayer money, he bears the corresponding liability for overpayments.

Plaintiff's argument appears to be based upon the assertion that the IDPA had the duty to obtain the requested records from Enbeef upon plaintiff's showing that he undertook reasonable efforts to obtain the records. As noted above, we find that plaintiff's membership in a group practice did not relieve him of the ultimate responsibility to maintain and provide patient records upon request of the IDPA. Plaintiff's failure to comply with this duty properly results in repayment to the Department the amount of money which he is unable to substantiate with records.

■ Plaintiff next contends that the IDPA erroneously calculated the amount of money overpaid. We reject plaintiff's contention that the IDPA's method of extrapolation used in calculating the amount of overpayments is improper. The IDPA's use of extrapolation in determining amounts of overpayments has withstood recent constitutional attack. *Illinois Physicians Union v. Miller* (7th Cir. 1982), 675 F.2d 151.

■ Plaintiff finally contends that the monetary judgment erroneously includes seven post-November 4, 1983, payments. Plaintiff argues that the IDPA was unauthorized to make these payments to En-

beef after receipt of plaintiff's revocation of the power of attorney on November 4, 1983.

The IDPA pays claims based upon who is authorized to receive payment at the time the billing form is signed. Upon review of the record, we find that these bills were submitted prior to November 4, 1983, and these payments were made for services rendered prior to November 4, 1983. For these reasons, we find that the inclusion of the post-November 4, 1983, payments in the amount plaintiff is ordered to repay the Department is not erroneous.

Accordingly, we affirm the decision ordering plaintiff to repay the sum of $15,118.11 to the IDPA.

## IV

Plaintiff's final assignment of error is that the trial court erroneously refused to order production of the documents used by IDPA auditor, Hope Little, to refresh her recollection a few weeks prior to testifying at the administrative hearing.

An administrative hearing is required to be conducted according to the rules of evidence and privilege as applied in civil cases in the trial courts. (Ill. Rev. Stat. 1987, ch. 127, par. 1012.) In Illinois, upon request, opposing counsel has the right to inspect and use on cross-examination any documents used by a witness, prior to trial, to refresh his or her recollection. *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607; *People v. Scott* (1963), 29 Ill. 2d 97, 193 N.E.2d 814.

However, Illinois law also provides that evidentiary errors committed at administrative hearings are harmless where the objecting party fails to demonstrate how the error prejudiced his case. *Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 1038, 530 N.E.2d 682, *appeal denied* (1989), 125 Ill. 2d 575.

Upon review of the record, we find that plaintiff has failed to demonstrate how the trial court's ruling prejudiced him. Plaintiff has not shown how the production of auditor Little's notes could have affected the decision of the IDPA. The notes were taken during two interviews conducted by Ms. Little of the plaintiff himself. It is undisputed that plaintiff breached his duty to produce records requested by the IDPA. We have also determined that the method of calculating the amount of repayment ordered is not error. Accordingly, we find that the hearing officer's failure to allow plaintiff to inspect and use auditor Little's notes is harmless error.

For the reasons stated herein, we affirm the judgment of the circuit court of Cook County.

Affirmed.

DiVITO, P.J., and HARTMAN, J., concur.