JAWED SIDDIQUI, Plaintiff-Appellant, v. THE DEPARTMENT OF PROFESSIONAL REGULATION et al., Defendants-Appellees.

Fourth District   No. 4—98—0849

Argued June 23, 1999.—Opinion filed September 28, 1999.

Alan Rhine (argued), of Law Office of Alan Rhine, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Erik G. Light (argued), Assistant Attorney General, of counsel), for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

On October 7, 1996, the Illinois Department of Professional Regulation (Department), appellee, filed a complaint against Dr. Jawed Siddiqui, plaintiff, under the Medical Practice Act of 1987 (Medical Practice Act) (225 ILCS 60/1 *et seq.* (West 1992)), seeking revocation or suspension of his license to practice medicine for allowing another person, James Summers, to use his license (225 ILCS 60/22(A)(11) (West 1992)) and for aiding and abetting Summers in the practice of medicine (225 ILCS 60/22(A)(32) (West 1992)). On November 6, 1997, the Department suspended Siddiqui's license for six months. Siddiqui appeals, arguing (1) the petition should have been dismissed for techni-

cal defects; (2) Summers' actions did not constitute the practice of medicine; (3) insufficient evidence showed Siddiqui aided and abetted him in these actions; (4) the Department committed several evidentiary errors; (5) the report of the hearing officer was not properly served on him; and (6) the sanction was too severe. We affirm.

The Department's complaint alleged Siddiqui allowed Summers keys and access to his office between June 1993 and June 1995 and that, in this period, Siddiqui allowed Summers to treat and diagnose several patients, including, but not limited to Carol Underwood, Willie Hall, Ruby Hall, Regina Bell, Rita Haas, Mary Haas, Tracee Underwood, Richard Bliven, and Janet Boxderfer. The complaint alleged Siddiqui allowed Summers to write prescriptions for these patients using his name.

On November 13, 1996, Siddiqui filed a motion to dismiss pursuant to Title 68, section 1110.210, of the Illinois Administrative Code (Code) (68 Ill. Adm. Code § 1110.210 (1996)), arguing the complaint did not comply with the Code. Siddiqui argued, in pertinent part, the complaint did not afford him due process because it failed to set forth specific dates when people were treated by, or received prescriptions from, Summers. On November 18, 1996, the motion to dismiss was denied in an order stating the Department was to disclose its case file by December 9, 1996. The Department did so.

On April 10, 1997, an administrative hearing was held before a hearing officer.

On June 26, 1997, the hearing officer issued a report finding Siddiqui had allowed Summers to use his license and had aided and abetted him in the unlicensed practice of medicine. The report recommended that Siddiqui's license to practice medicine be revoked for six months, to be followed by a year of supervised probation. He was also ordered to complete 75 hours of continuing medical education. Siddiqui was notified of the hearing officer's decision on September 10, 1997.

On September 3, 1997, the Medical Disciplinary Board of the Department (Board) adopted the findings of the hearing officer. The Board also adopted the recommended sanction, making changes not relevant here. Siddiqui filed a petition for rehearing. On November 6, 1997, defendant, the Department's Director (Director), now Leonard Sherman, denied Siddiqui's motion for a rehearing and adopted the findings and recommendations of the Board. On October 15, 1998, the circuit court affirmed the Director.

In its answer to Siddiqui's motion to reconsider the hearing officer's decision, the Department cited for the first time two provisions of the Medical Practice Act which, it argued, provide guidance on the

practice of medicine. See 225 ILCS 60/49, 50 (West 1992). Section 49 of the Medical Practice Act sets forth conduct that violates that act in practicing medicine without a license, and section 50 of the Medical Practice Act defines the misdemeanor offense of the practice of medicine without a license.

These citations prompted Siddiqui to raise three related arguments. Siddiqui first argues the administrative complaint should have been dismissed because it failed to cite applicable rules or statutes, as required by the Illinois Administrative Procedure Act (Procedure Act) (5 ILCS 100/10—25(a)(3) (West 1992)). See 225 ILCS 60/47 (West 1992) (Procedure Act applies to proceedings under the Medical Practice Act). Second, Siddiqui argues the trial court erred by taking judicial notice of these statutes without giving him notice as required by the Procedure Act. See 5 ILCS 100/10—40(c) (West 1992); 735 ILCS 5/8—1001 (West 1992) (circuit court's power to recognize a statute is treated as a matter of judicial notice). Third, Siddiqui argues the circuit court erred by failing to define "the practice of medicine" specifically as part of its analysis.

■ The complaint was sufficient, even though it did not cite the above sections of the Medical Practice Act. The charges filed before an administrative agency need not be drawn with the precision required of pleadings in judicial actions. They need only be drawn sufficiently so that the alleged wrongdoer is reasonably apprised of the case against him to intelligently prepare his defense. *Rasky v. Department of Registration & Education*, 87 Ill. App. 3d 580, 585, 410 N.E.2d 69, 75 (1980).

■ The Procedure Act specifically requires a complaint to include "[a] reference to the particular Sections of the substantive and procedural statutes and rules involved." 5 ILCS 100/10—25(a)(3) (West 1992). However, this does not require a reference to every relevant section of the Medical Practice Act. This would be impractical, since the parties may reasonably disagree on which sections are relevant. The Procedure Act only requires the respondent be told the charge against him and the procedure being invoked, as they are reflected in the statutory scheme. The complaint informed Siddiqui he was being charged with allowing another to use his license (225 ILCS 60/22(A)(11) (West 1992)) and aiding another in the unlicensed practice of medicine (225 ILCS 60/22(A)(32) (West 1992)). The complaint included cites to these two sections of the Medical Practice Act. This was sufficient.

■ Sections 49 and 50 were properly raised for the first time in argument. Section 49 does not define the practice of medicine, but sets out violations in holding oneself out to the public as being engaged in

the diagnosis or treatment of an ailment or disease without a license. See 225 ILCS 60/49 (West 1992). This provision applies here only by analogy. While section 50 defines the crime of practicing medicine without a license (225 ILCS 60/50 (West 1992)), it does not define the practice of medicine. It merely provides a nonexhaustive list of some conduct that constitutes the practice of medicine.

Siddiqui argues the judicial notice provisions of the Procedure Act required the Department to give him notice before it recognized sections 49 and 50 of the Medical Practice Act. A circuit court's power to recognize a statute is treated as a matter of judicial notice. 735 ILCS 5/8—1001 (West 1992). The Procedure Act allows an agency to take judicial notice of any matter of which a circuit court may take judicial notice. However, the agency must first give the parties an opportunity to contest the material so noticed. 5 ILCS 100/10—40(c) (West 1992). Here, these sections were expressly raised for the first time after the hearing, in the Department's response to Siddiqui's petition for rehearing.

An evidentiary error in an administrative proceeding will not warrant reversal unless it prejudiced a party. *Lebajo v. Department of Public Aid*, 210 Ill. App. 3d 263, 272, 569 N.E.2d 70, 76 (1990). Siddiqui does not contest the content or applicability of these sections of the Medical Practice Act. Moreover, Siddiqui could and did file a reply brief after these sections were raised in the petition for rehearing. Siddiqui argues he would have prepared his case differently had he known these provisions applied here. Section 10—25(a)(3) of the Procedure Act, discussed above, is designed to give parties the chance to prepare their legal arguments in advance of the hearing. Section 10—40(c) is not. Section 10—40(c) allows the agency to give the respondent notice of the material during the hearing itself. 5 ILCS 100/10—40(c) (West 1992).

■ Siddiqui argues the hearing officer, the Board and the Director erred by failing to define the "practice of medicine" explicitly as part of its analysis. An order of suspension must contain a brief, concise statement of the grounds upon which the Department's action is based. 225 ILCS 60/40 (West 1992). The Procedure Act also requires that a final decision must include findings of fact and conclusions of law, separately stated. 5 ILCS 100/10—50(a) (West 1992).

■ The trial court was not required to define the practice of medicine specifically as part of its analysis. Section 22 of the Medical Practice Act provides the Department, upon recommendation of the Board, shall adopt rules that set forth standards to be used in determining several violations and terms under the Medical Practice Act. 225 ILCS 60/22 (West 1992). It does not require the Department

to define "the practice of medicine." The Department is not required to set forth explicit standards defining the practice of medicine. See *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 99, 199 N.E.2d 769, 786 (1964) (expression of one thing in a statute implies exclusion of others).

The legislature did not define "the practice of medicine" in the definitions section of the Medical Practice Act (225 ILCS 60/2 (West 1992)). A flexible definition of the practice of medicine is required in a statute intended to govern various healers from osteopaths (see *People v. Frankowsky*, 371 Ill. 493, 494-95, 21 N.E.2d 582, 582-83 (1939)) to herb doctors (see *People v. Mash*, 235 Ill. App. 314, 315-16 (1925)).

The Director's final decision adopted the findings and conclusions of the Board. The Board, in turn, adopted the findings and conclusions of the hearing officer (with minor changes to the sanction). After detailed findings summarizing the evidence given, the hearing officer's report states the legal conclusion that Siddiqui allowed Summers to use his license and aided and abetted Summers in the practice of medicine. The report then highlights specific evidence supporting this conclusion, including Summers' credible testimony; Ruby Hall's testimony that she saw Summers remove stitches; and Carol Underwood's testimony that Summers gave her injections and misdiagnosed her daughter and that she saw Summers write out prescriptions and sign Siddiqui's name.

Implicit in this order is a definition of the practice of medicine which includes these actions. It is enough if the agency indicates the path of the decision. The agency need not spell out every step in the reasoning, if it provides enough steps that the full course may be discerned. *Cf. Brown v. Bowen*, 847 F.2d 342, 346 (7th Cir. 1988) (interpreting federal administrative law). Given the flexible statutory definition of the practice of medicine, a more certain statement may not have been possible.

Prior to the evidentiary hearing before the Department, Siddiqui filed a motion to dismiss the administrative complaint because it failed to allege specific dates upon which the misconduct occurred. Siddiqui argues the motion to dismiss should have been granted. A motion to dismiss a complaint is reviewed *de novo. Vala v. Pacific Insurance Co.*, 296 Ill. App. 3d 968, 970, 695 N.E.2d 581, 582 (1998).

Siddiqui was entitled to a short and plain statement of the matters that were the basis for the claim. 5 ILCS 100/10—25(a)(4) (West 1992); 68 Ill. Adm. Code § 1110.70(a)(3) (1996). Procedural due process does not require that the charges or complaint in an administrative proceeding be drawn with the same precision, refinements, or subtleties as pleadings in a judicial proceeding. Rather, the charge

need only reasonably advise the respondent as to the charges so that he or she will intelligently be able to prepare a defense. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 93, 606 N.E.2d 1111, 1119 (1992).

■ Due process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand. See *Abrahamson*, 153 Ill. 2d at 92, 606 N.E.2d at 1119. In *Talman v. Department of Registration & Education*, 78 Ill. App. 3d 450, 456, 397 N.E.2d 151, 155 (1979), a complaint that a physician improperly dispensed medication was sufficient, even though it merely stated the physician dispensed certain amounts of one drug within an eight-month period and another drug within a one-year period.

Significantly, Siddiqui does not deny that Summers saw the patients in question and argues, primarily, that his actions did not amount to the practice of medicine. Siddiqui argues it was necessary to know the dates of treatment to determine from his records whether he was in his Belleville office when Summers allegedly saw the patients, to subpoena pharmacy prescriptions for specific dates to determine who signed the prescription, and to cross-examine Summers effectively.

■ In determining whether the respondent has adequate notice, the court may consider the discovery and other materials available to the respondent. See *Secrest v. Department of Corrections*, 64 Ill. App. 3d 458, 460, 381 N.E.2d 367, 368 (1978). The complaint provided Siddiqui with a list of patients whom Summers had been allowed to diagnose and treat. Summers testified keeping files regarding patients was part of his job. Summers testified that every time he saw a patient, a billing form was prepared, and he indicated on the form that it was him who saw the patient. Siddiqui could obtain the dates these patients were seen by examining his own patient files.

Siddiqui argues that, without the dates of treatment, he could not respond to Underwood's testimony regarding billing records. The investigative report provided to Siddiqui during discovery stated Underwood first saw Siddiqui in May or June 1994, but did not start seeing Summers until August 1994. Underwood had testified on direct examination that Siddiqui billed her insurance company for Summers' examining her and her daughter prior to this date, in May 1994. The hearing officer's findings state the visit occurred in May 1994. Siddiqui argues that, because this was before Underwood first saw Summers, he had no reason to examine billing records relating to this visit. However, the billing records presented for this visit were dated May 1995. Apparently, Underwood simply misspoke, and the hearing

officer used the wrong date. If the May 1995 date is used, no conflict exists between the information provided to Siddiqui prior to trial and Underwood's testimony based on the billing records.

■ Siddiqui also argues that testimony regarding the May 1995 visit should have been barred due to discovery violations and unfair surprise. Siddiqui's brief contains nothing more than two short, conclusory statements on this point, with no argument or citation to authority. Therefore, the issue is waived on appeal. 177 Ill. 2d R. 341(e)(7).

■ Siddiqui argues the Department erred in finding Summers was practicing medicine. The Department has the burden of proving its case by clear and convincing evidence. 68 Ill. Adm. Code § 1110.190(a) (1996). However, on review, the findings and conclusions of a hearing officer on questions of fact are considered to be *prima facie* true and correct. A reviewing court may set aside those findings only when they are against the manifest weight of the evidence. A decision is contrary to the manifest weight of the evidence only where the opposite conclusion is clearly evident. *Maun v. Department of Professional Regulation*, 299 Ill. App. 3d 388, 401-02, 701 N.E.2d 791, 801 (1998).

Siddiqui argues that not every act performed by a physician constitutes the practice of medicine. Duties such as changing bandages, administering injections, drawing blood, and taking blood pressure are often performed by nonphysicians.

However, the Department could reasonably conclude from Summers' testimony that Summers diagnosed colds and prescribed medications. Summers made final decisions as to the treatment of patients by prescribing medications, even if he only repeated prior prescriptions. Compare *Biogenetics, Ltd. v. Department of Public Health*, 89 Ill. 2d 92, 97-98, 431 N.E.2d 1042, 1044 (1982) (physician's assistant who performed preliminary pelvic examinations to screen patients was not practicing medicine).

Siddiqui argues the record does not support the hearing officer's conclusion that Summers treated and diagnosed Bliven. Summers' uncontradicted testimony was that he refused treatment to Bliven and told him he was not a doctor. Siddiqui also notes the record does not support the finding that Summers treated and diagnosed Bell, who merely received a refill of a medication. However, any error was harmless. The record amply supports a finding that Summers treated and diagnosed other patients on several occasions.

Siddiqui argues he may delegate authority to office personnel. The fact that licensed professionals other than physicians may be permitted to perform certain medical procedures under the supervision of a licensed physician does not render the performance of those same

procedures by unsupervised and unlicensed individuals outside the ambit of the Medical Practice Act. *People v. Bickham*, 250 Ill. App. 3d 141, 146, 621 N.E.2d 86, 89 (1993).

The Department could reasonably conclude that much of Summers' conduct was not committed under the direction or supervision of Siddiqui. Summers testified he diagnosed patients when Siddiqui was not present. Underwood, Hall, and Summers testified Summers wrote prescriptions. Underwood testified she received injections from Summers without Siddiqui present.

Siddiqui argues Summers was acting within his authority as a licensed pharmacist's assistant. However, Summers admitted he did not have a professional license that would allow him to prescribe medication or treat patients. While the Pharmacy Practice Act of 1987 provides a pharmacist may advise or counsel patients on the use of drugs or devices and provide health information related to them (225 ILCS 85/3(d) (West 1992)), the pharmacist's role does not extend to deciding whether to prescribe drugs. This requires a medical judgment as to the needs of the patient, the effect of the drug, and the effectiveness of other types of treatment. See *Suarez v. Pierard*, 278 Ill. App. 3d 767, 770-71, 663 N.E.2d 1039, 1042-43 (1996).

Siddiqui argues the Department erred in finding Summers credible and relying upon his testimony. Siddiqui notes Summers had an incentive to give the Department incriminating information to get his professional license back. Siddiqui points to alleged inconsistencies in Summers' testimony.

Upon judicial review of an administrative hearing officer's decision, a reviewing court does not reweigh the evidence or assess the credibility of witnesses. The hearing officer, as the trier of fact, evaluates all evidence, judges the credibility of witnesses, resolves any conflicts in the evidence, and draws reasonable inferences and conclusions from the facts. *Maun*, 299 Ill. App. 3d at 401, 701 N.E.2d at 801.

The hearing officer knew Summers' license was under scrutiny by the Department and explicitly considered this in evaluating his testimony. Summers' failure to remember the name of anyone he diagnosed does not render his testimony that he diagnosed patients incredible as a matter of law. Nor do the other alleged inconsistencies in Summers' testimony.

Siddiqui argues the Department erred in finding he knew of Summers' actions. Because this is an issue of fact, the Department's decision will not be reversed unless it is against the manifest weight of the evidence. See *Maun*, 299 Ill. App. 3d at 401-02, 701 N.E.2d at 801. Siddiqui points to the testimony of an employee in Siddiqui's office that Summers' actions went on without his knowledge. However, Summers

testified he treated and diagnosed patients in Siddiqui's presence, and he billed hours to Siddiqui's practice. According to Summers, he used prescription forms presigned by Siddiqui. Underwood testified Siddiqui knew Summers had diagnosed her daughter and prescribed medication. Again, it is the role of the Department to resolve conflicts in testimony. See *Maun*, 299 Ill. App. 3d at 401, 701 N.E.2d at 801.

Ruby Hall testified Summers attempted to remove stitches from her husband's back. Siddiqui argues the Department committed reversible error by failing to admit the letter from Dr. Wanless, a reconstructive surgeon, suggesting Willie Hall did not receive stitches during his surgery. Business records, including medical records, are admissible in proceedings before the Department. The record must be a memorandum, report, record, or data compilation. 68 Ill. Adm. Code § 1110.200(a) (1996).

Siddiqui's counsel characterized the letter as a report, whereas the hearing officer characterized it as mere correspondence. The appellate record does not include a copy of the letter from Wanless. When omissions in the appellate record result in ambiguities as to the record, all doubts are resolved against the appellant. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 546-47, 662 N.E.2d 1248, 1258 (1996). Therefore, the hearing officer's ruling the letter is not a memorandum, report, record, or data compilation is affirmed.

Siddiqui argues the sanction in this case was improper. Siddiqui's license to practice medicine was suspended for six months followed by a year of probation. While a reviewing court must defer to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest, a reviewing court has authority to review a sanction imposed. *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693, 704, 639 N.E.2d 1318, 1325 (1994). A sanction will be affirmed unless it constitutes an abuse of discretion. This occurs when the department imposes a sanction that is (1) overly harsh in view of the mitigating circumstances or (2) unrelated to the purpose of the statute. *Pundy v. Department of Professional Regulation*, 211 Ill. App. 3d 475, 488, 570 N.E.2d 458, 467 (1991).

Siddiqui argues review of the sanction is impossible because the Department failed to state a reason for imposing the revocation. The Medical Practice Act does not explicitly require the Department to enter any particular findings before imposing a sanction. Moreover, the Board adopted the findings of the hearing officer and imposed almost the same sanction (again, with minor changes not relevant here). The hearing officer gave an extensive summary of the evidence presented and concluded Siddiqui knew of Summers' activities or he

had "stuck his head in the sand" and avoided the obvious by not hiring an office manager, not spending time in the Belleville office, and allowing visits with Summers to be billed.

The purpose of the Medical Practice Act is to protect the public health and welfare from those not qualified to practice medicine. *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d 322, 333, 538 N.E.2d 1140, 1144-45 (1989). The sanction in this case was related to this purpose. It discouraged Siddiqui from assisting Summers, an unqualified person, in practicing medicine.

Siddiqui argues the sanction was too harsh. The Department could reasonably conclude Siddiqui (1) provided an office and keys to Summers; (2) called him doctor in front of patients; (3) provided him with signed prescription forms; (4) knew he had diagnosed Tracee Underwood; and (5) either knew or was wilfully blind to the fact that Summers had diagnosed or treated several other patients.

Siddiqui notes that Dr. Aleksadi Krum and Dr. Ruben Incoencio did not receive penalties this harsh for similar violations of the Medical Practice Act. According to Siddiqui's motion to stay the agency decision, both Krum and Incoencio were given two years' probation and a $1,000 fine for aiding and abetting the unlicensed practice of medicine (97—1816—LEG, Consent Order entered November 25, 1997; 96—5440—LEG, Consent Order entered October 11, 1996).

The supreme court has discussed a special need for uniformity or consistency in sanctions in disciplinary proceedings. *In re Wigoda*, 77 Ill. 2d 154, 163, 395 N.E.2d 571, 575 (1979). Accordingly, the hearing officer may consider sanctions imposed in similar cases. *Singh v. Department of Professional Regulation*, 252 Ill. App. 3d 859, 870, 625 N.E.2d 656, 664 (1993); *Arceo v. Selcke*, 226 Ill. App. 3d 166, 171-72, 589 N.E.2d 675, 679 (1992). Still, each case must be considered on its merits (*In re Spencer*, 68 Ill. 2d 496, 501, 370 N.E.2d 210, 213 (1977)), and it is for the Department to determine the appropriate sanction in each case (*Dharmavaram v. Department of Professional Regulation*, 216 Ill. App. 3d 514, 529, 576 N.E.2d 361, 371 (1991)).

Siddiqui has failed to show the sanctions against Krum and Incoencio require a different result here. In *Dharmavaram*, 216 Ill. App. 3d at 529, 576 N.E.2d at 371, an argument that sanctions against a doctor denied him equal protection was rejected when the doctor merely cited the outcomes of five other cases against other doctors, without reference to the facts of each case. Similarly, here, Siddiqui merely cites the outcome in these cases with no discussion of the facts supporting the sanctions. Moreover, cases against Krum and Incoencio were resolved by consent order.

■ Finally, Siddiqui argues the Department violated the Code

when it allowed the Board to review the hearing officer's report without notifying him. The Code provides:

> "All investigative procedures, information arising out of the investigation of complaints, activities of the Complaint Committee, and informal conferences shall be confidential. All other proceedings and documents beginning with the filing of a formal complaint shall be open to the public." 68 Ill. Adm. Code § 1285.310(a) (1996).

Siddiqui argues he was deprived of a public proceeding before the Department because it decided his case before he was notified and had a chance to respond to the hearing officer's report.

The Department counters that this section of the Code does not require it to notify the respondent before forwarding a copy of the hearing officer's report to the Board. An agency's interpretation of its own rules will be accorded deference unless it is clearly erroneous, arbitrary, or unreasonable. An agency's application and construction of a rule will only be reversed if plainly erroneous. *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 243 Ill. App. 3d 421, 428, 610 N.E.2d 1356, 1361-62 (1993).

The Medical Practice Act merely provides that the hearing officer shall report to the Board within 30 days after receipt of the record. 225 ILCS 60/35 (West 1992). It does not explicitly require service of the report. Elsewhere in the Medical Practice Act and the Procedure Act, when an agency is required to serve a proposed decision on a respondent and give him a chance to respond, this requirement is imposed explicitly. See 225 ILCS 60/40 (West 1992); 5 ILCS 100/10—45 (West 1992).

For all of the above reasons, we affirm.

Affirmed.

KNECHT, P.J., and GARMAN, J., concur.