2016 IL App (1st) 150439

SIXTH DIVISION
April 29, 2016

No. 1-15-0439

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOSEPH M. WALSH, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 14 CH 6220 |
| | ) | |
| THE ILLINOIS DEPARTMENT OF INSURANCE and | ) | Honorable Kathleen M. Pantle, |
| ANNE MELISSA DOWLING, in Her Official Capacity | ) | Judge Presiding. |
| as Acting Director of Insurance, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

JUSTICE DELORT delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion.

**OPINION**

¶ 1    The Director of the Illinois Department of Insurance (Department), Andrew Boron,

(Director)[1] issued an order revoking the Illinois insurance producer license of plaintiff Joseph M.

Walsh.  Walsh requested a hearing to challenge the Director's decision.  After the hearing, a

Department hearing officer recommended that: (1) the Director's decision to revoke Walsh's

license be sustained; (2) Walsh be assessed a $5000 civil penalty; and (3) the costs of the

hearing, totaling $520.90, be assessed against Walsh.  Thereafter, the Director entered an order

adopting the hearing officer's findings of fact and conclusions of law.  In addition, the Director

---

[1] Anne Melissa Dowling replaced Boron and became Acting Director of the Illinois Department of Insurance during
the pendency of this case.  By operation of law, Ms. Dowling is substituted as a defendant.  See 735 ILCS 5/2-
1008(d) (West 2014).

adopted the hearing officer's recommendation that the Department revoke Walsh's license and assess the costs of the hearing against him. However, the Director overruled the hearing officer in part and increased the civil penalty to $15,000.

¶ 2     Walsh filed a complaint for administrative review in the circuit court of Cook County. The circuit court affirmed the Director's decision, precipitating this appeal.

¶ 3                                          BACKGROUND

¶ 4     On June 21, 2012, the Director issued an order of revocation against Walsh's insurance producer license pursuant to section 500-70 of the Illinois Insurance Code (Code) (215 ILCS 5/500-70 (West 2012)). The order was issued after a Department investigation revealed that: (1) Walsh's insurance producer license had been revoked by the Ohio Department of Insurance (Ohio); (2) Walsh had received a letter of denial from the Wisconsin Office of the Insurance Commissioner (Wisconsin) in response to a license application he filed; and (3) Walsh had entered into a consent order and stipulation with the Michigan Office of Financial and Insurance Regulation (Michigan). The investigation further revealed that, those incidents notwithstanding, Walsh had answered "no" in response to a question on his 2007, 2009, and 2011 Illinois insurance producer applications inquiring whether he had "an insurance license denied, revoked, suspended or surrendered for disciplinary reasons in any state?"

¶ 5     Thus, the Director found that Walsh "provided incorrect, misleading, incomplete and materially untrue information in [his] license application and obtained a license through misrepresentation." Invoking sections 500-70(a)(1) and (3) of the Code, the Director thereafter revoked Walsh's license and assessed a civil penalty of $15,000. See 215 ILCS 5/500-70(a)(1), (3) (West 2012). On July 17, 2012, Walsh filed a petition for hearing. Walsh's hearing took place on February 14, 2013.

¶ 6     At the hearing, Ronald Masino, an investigator with the Department, explained that in 2002, Walsh, acting on behalf of a consumer, submitted an application to an insurance company in which the consumer's signature had been forged.  On April 27, 2005, Walsh entered into a consent order with the Department, in which Walsh did not admit to violating the Code but did consent to pay a $2000 civil penalty.

¶ 7     On March 3, 2005, Walsh submitted a renewal application to Wisconsin.  At that time, Walsh's consent order with Illinois had not yet been entered.  On June 15, 2005, Wisconsin denied Walsh's application because he had answered "no" when asked whether he had been disciplined in another state and an investigation had revealed the existence of the 2005 Illinois consent order.

¶ 8     Walsh explained that he answered the question truthfully at the time he submitted the Wisconsin application because at that time, the 2005 Illinois consent order had not yet been executed.  He further explained that he was not aware he had to update the application, stating that he instead assumed that he only had to disclose the order if and when he sought to renew his Wisconsin license.  He conceded, however, that he never contacted Wisconsin to verify if his assumption was correct.

¶ 9     On January 10, 2006, Ohio sent Walsh a letter alleging: (1) that he submitted an insurance application containing a forged signature in 2002; (2) that based on that incident, Walsh entered into a consent order with the Department in 2005; (3) that Walsh did not report the 2002 incident or 2005 consent order to Ohio; and (4) that Walsh failed to respond to an inquiry regarding the 2005 consent order.  The letter further informed Walsh that Ohio intended to discipline him and that he could request a hearing.  Walsh did not request a hearing.  On March 13, 2006, Ohio revoked his license, citing the 2002 incident.

¶ 10    Walsh testified that he sent Ohio a letter on March 15, 2005, seeking cancellation of his license effective April 1, 2005, because he no longer had clients in Ohio.  Walsh explained that he did not request a hearing because he thought that his license had been cancelled in accordance with his March 15 letter.  According to Walsh, after he received the January 2006 letter, he called Ohio and eventually faxed a copy of the March 15 letter there.  However, at the hearing, Walsh produced no documentary evidence that he mailed or faxed the letter.

¶ 11    Thereafter, Walsh applied for another license with Wisconsin.  That application was denied by letter on December 16, 2009.  In the denial letter, Wisconsin regulators stated that, although Walsh's application disclosed both the 2005 Illinois consent order and 2005 Wisconsin license denial, an investigation revealed that Ohio had revoked Walsh's license in 2006, a fact he had omitted from his most recent application.  Walsh explained that he did not believe he was required to report the 2006 Ohio revocation because it was based on the same conduct underlying the 2005 Illinois consent order, which he had reported to Wisconsin.  He conceded, however, that he never contacted Wisconsin to verify if his assumption was correct.

¶ 12    On July 8, 2011, Michigan sent Walsh a letter informing him that it intended to discipline him because he had failed to report the 2006 Ohio revocation in his 2009 Wisconsin application.  On January 30, 2012, Walsh entered into a consent order with Michigan imposing a $500 civil penalty.

¶ 13    On October 30, 2007, October 27, 2009, and October 20, 2011, Walsh submitted additional applications to the Department.  In each application, Walsh answered "no" to a question asking whether his license had been suspended, denied, or revoked in another state.  With respect to the 2007 application, Walsh explained that he did not report the 2005 Wisconsin denial because he did not know it counted as "discipline" and that he did not report the 2006

Ohio revocation because he had previously reported it to the Department in an April 15, 2006 letter and that he assumed that that disclosure was sufficient. With respect to the 2011 application, Walsh explained that he was not aware of the impending Michigan discipline when he submitted the application. According to Walsh, Michigan sent the July 8, 2011 letter to his old address and he only became aware of the Michigan proceedings in November 2011. Walsh claimed, however, that he notified the Department of the Michigan discipline in February 2012.

¶ 14    In mitigation, Walsh testified that he was fired after the 2002 forgery incident, at which point he realized he "wasn't such a great guy" and decided to try to change his life. Walsh began seeing a psychologist, became active in his church, and rose to a leadership position in his local Rotary Club and chamber of commerce.

¶ 15    In addition, Walsh presented three consent orders that the Department had entered into with other licensees and argued that he should face comparable discipline. In the first order, the licensee, Dragan Djordjevic, agreed to a $1000 civil penalty in response to Department allegations that he answered "no" when asked whether his license had been denied in another state, when in fact he had had an application denied by South Dakota in 2007. In the second order, the licensee, Andrew Gorelick, agreed to a $2000 civil penalty in response to Department allegations that he failed to report consent orders from Florida and South Carolina. Finally, in the third order, Edward Miller agreed to, *inter alia*, a $5000 civil penalty in response to Department allegations that: (1) in 2006, he was convicted of filing a false tax return and that he reported his guilty plea but not his conviction to the Department; and (2) in his 2007 and 2009 renewal applications, he failed to report that the Department denied his applications in 1991 and 1999.

¶ 16     After the conclusion of evidence, the hearing officer made findings of fact, conclusions of law, and recommended that (1) the Director's order of revocation stand; (2) Walsh be assessed a $5000 civil penalty; and (3) Walsh be assessed the costs of the proceeding, totaling $520.90.

¶ 17     On February 19, 2014, the Director entered an order adopting the hearing officer's findings of fact, conclusions of law, and her first and third recommendations.  The Director rejected the hearing officer's recommendation of a $5000 civil penalty and instead assessed defendant a $15,000 penalty.  Walsh filed a petition for rehearing, which the Director denied.

¶ 18     On April 10, 2014, Walsh filed a complaint for administrative review in the circuit court of Cook County.  On January 21, 2015, the circuit court issued an order affirming the Director's decision to revoke Walsh's license.  This appeal followed.

¶ 19                                        ANALYSIS

¶ 20     In administrative review cases, we review the decision of the agency, not the judgment of the circuit court.  *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009).  In this appeal, Walsh has not challenged the factual or legal basis underlying his discipline.  Walsh's sole argument is that he was disciplined too harshly.  "When considering an administrative sanction, a reviewing court 'defers to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest.' "  *Gruwell v. Illinois Department of Financial & Professional Regulation*, 406 Ill. App. 3d 283, 295 (2010) (quoting *Abrahamson v. Illinois Department of Professional Regulation,* 153 Ill. 2d 76, 99 (1992)).  Accordingly, an administrative sanction will be upheld unless it is an abuse of discretion.  *Siddiqui v. Illinois Department of Professional Regulation*, 307 Ill. App. 3d 753, 763 (1999).  "This occurs when the department imposes a sanction that is (1) overly harsh in view of the mitigating circumstances or (2) unrelated to the purpose of the statute."  *Id*.

6

¶ 21 Walsh first argues that the Director abused his discretion by ignoring the three cases Walsh claimed were comparable to his. This argument has two deficiencies. First, Walsh's contention that the cases he cited were ignored is positively rebutted by the administrative record. The hearing officer specifically noted that "minimal weight" was given to the cases cited by Walsh. Thus, the record shows that these cases were considered.

¶ 22 Second, Walsh's comparator cases are inapposite. Our supreme court has explained that when the facts of an administrative action "are strikingly similar to those in another case, a degree of uniformity in the discipline should be sought." *In re Clayter*, 78 Ill. 2d 276, 283 (1980). But when the cases being compared are not similar, the need for "uniformity" disintegrates. Here, Walsh's case is not comparable to the three cases he cites because, unlike the respondents in those cases, Walsh was subjected to discipline numerous times in other states and repeatedly submitted insurance producer applications to the Department that contained answers to questions which were materially untrue.

¶ 23 Next, Walsh argues that the sanctions entered against him were an abuse of discretion because the Director failed to properly account for the mitigating evidence Walsh presented. Walsh's mitigating evidence consisted of explanations for his various reporting failures in Ohio, Wisconsin and Michigan. These explanations, in brief summary, were that Walsh: (1) was ignorant of his reporting requirements under various state laws and (2) believed, albeit incorrectly, that he had cancelled his Ohio license, causing him to forego the opportunity for a hearing when Ohio notified him it was taking disciplinary action against him. The feasibility of these explanations depends on Walsh's credibility, which the hearing officer found lacking. This determination is supported by the record. Walsh pled ignorance of the law, but admitted that he

had been in the insurance industry for three decades.  Moreover, Walsh conceded that he was familiar with the industry and how licensing regulations operated.

¶ 24    Likewise, although Walsh claimed he sent Ohio a letter instructing it to cancel his license there, Walsh produced no evidence that Ohio received the letter.  As such, the hearing officer's credibility determination was amply justified from the record.  Moreover, we note that, even if the evidence were closer, we would still be hard-pressed to overturn the credibility determination because it is "not our function to reevaluate witness credibility or resolve conflicting evidence" when reviewing administrative proceedings.  *Parikh v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2014 IL App (1st) 123319, ¶ 28.

¶ 25    Finally, Walsh contends that the sanctions imposed by the Director are inconsistent with the purpose of the Code because they "do not protect the public interest."  "The stated purpose of the Insurance Code is to protect the public interest in the area of for-profit insurance."  *Coronet Insurance Co. v. Washburn*, 201 Ill. App. 3d 633, 639 (1990).  Walsh specifically argues that the Director's sanctions do not serve the public interest because the public has been aware of the 2005 Illinois consent order since the time of its execution.  Be that as it may, this argument ignores the fact that Walsh is not being disciplined for the conduct giving rise to the 2005 Illinois consent order, but rather for repeatedly giving false answers to questions on insurance applications in Ohio, Wisconsin, Michigan and Illinois that inquired whether Walsh's license had ever been subject to discipline.  While it is true that all of the misconduct leading up to the present sanctions against Walsh trace back in some shape or form to the 2005 Illinois consent order, that fact is simply not dispositive.  Each instance of dishonesty in Walsh's 2007, 2009, and 2011 Illinois license applications in which Walsh falsely answered "no" was an independent episode of sanctionable misconduct.  See 215 ILCS 5/500-70(a)(1), (3) (West 2012).  Likewise,

the disciplinary action which Ohio, Wisconsin, and Michigan took against Walsh similarly rendered him subject to disciplinary proceedings in Illinois.  See 215 ILCS 5/500-70(a)(9) (West 2012).  Because the misconduct animating the Director's sanctions against Walsh is distinct from the misconduct underlying the 2005 Illinois consent order, we find that the sanctions, though harsh, are consistent with the purpose of the Code.

¶ 26                                    CONCLUSION

¶ 27    Based on the foregoing, we affirm the Director's decision in all respects.

¶ 28    Affirmed.