28 September 1999

NO. 4-98-0849

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

JAWED SIDDIQUI, M.D., ) Appeal from

     Plaintiff-Appellant, ) Circuit Court of

v. ) Sangamon County

THE ILLINOIS DEPARTMENT OF )    No. 97MR314

PROFESSIONAL REGULATION and ) 

LEONARD SHERMAN, Director, )    Honorable

Defendants-Appellees. ) Donald M. Cadagin

) Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

On October 7, 1996, the Illinois Department of Profes

sional Regula­tion (Department), appel­lee, filed a com­plaint against Dr. Jawed Siddiqui, plaintiff, under the Medical Practice Act of 1987 (Medical Practice Act) (225 ILCS 60/1 
et
 
seq
. (West 1992)), seeking revoca­tion or suspen­sion of his license to prac­

tice medicine for allowing another person, James Summers, to use his license (225 ILCS 60/22(A)(11) (West 1992)) and for aiding and abetting Summers in the practice of medicine (225 ILCS 60/22(A)(32) (West 1992)).  On November 6, 1997, the Department suspended Siddiqui's license for six months.  Siddiqui appeals, arguing (1) the petition should have been dis­missed for technical defects; (2) Summers' actions did not consti­tute the practice of medicine; (3) insuf­fi­cient evi­dence showed Siddiqui aided and abetted him in these actions; (4) the Depart­ment committed several evidentiary errors; (5) the report of the hearing officer was not properly served on him; and (6) the sanction was too severe.  We affirm.  

The Department's complaint alleged Siddiqui allowed Summers keys and access to his office between June 1993 and June 1995 and that, in this period, Siddiqui allowed Summers to treat and diagnose several patients, including, but not limited to Carol Underwood, Willie Hall, Ruby Hall, Regina Bell, Rita Haas, Mary Haas, Tracee Underwood, Richard Bliven, and Janet Boxderfer.  The com­plaint alleged Siddiqui allowed Summers to write prescrip­

tions for these patients using his name.

On November 13, 1996, Siddiqui filed a motion to dismiss pursuant to Title 68, section 1110.210 of 
the Illinois Adminis­trative Code (Code) (68 Ill. Adm. Code §1110.210 (1996))
, arguing the complaint did not comply with the Code.  Siddiqui argued, in pertinent part, the complaint did not afford him due process because it failed to set forth specific dates when people were treated by, or re­ceived pre­scrip­tions from, Summers.  On November 18, 1996, the motion to dismiss was denied in an order stating the Department was to disclose its case file by Decem­ber 9, 1996.  The Department did so.

On April 10, 1997, an administrative hearing was held before a hearing officer.  

On June 26, 1997, the hearing officer issued a report finding Siddiqui had allowed Summers to use his license and had aided and abetted him in the unlicensed practice of medicine.  The report recommended that Siddiqui's license to practice medicine be revoked for six months, to be followed by a year of supervised probation.  He was also ordered to complete 75 hours of continuing medical education.  Siddiqui was noti­fied of the hearing officer's deci­sion on Septem­ber 10, 1997.

On September 3, 1997, the Medical Disciplinary Board of the Department (Board) adopted the findings of the hearing officer.  The Board also adopted the recommended sanction, making changes not relevant here.  Siddiqui filed a petition for rehear­

ing.  On November 6, 1997, defendant, the Department's Direc­tor (Director), now Leonard Sherman, denied Siddiqui's motion for a rehear­ing and adopted the findings and recommenda­tions of the Board.  On October 15, 1998, the circuit court af­firmed the Director.

In its answer to Siddiqui's motion to reconsider the hearing officer's decision, the Department cited for the first time two provi­sions of the Medical Practice Act which, it argued, provide guidance on the prac­tice of medicine.  See 225 ILCS 60/49, 50 (West 1992).  Section 49 of the Medical Practice Act sets forth conduct that violates that act in practicing medicine without a license and section 50 of the Medical Practice Act defines the misdemeanor offense of the practice of medicine without a license.

These citations prompted Siddiqui to raise three related argu­ments.  Siddiqui first argues the admin­is­tra­tive com­

plaint should have been dismissed because it failed to cite applicable rules or statutes, as required by the Illinois Adminis­tra­tive Proce­dure Act (Procedure Act) (5 ILCS 100/10-

25(a)(3) (West 1992)).  See 225 ILCS 60/47 (West 1992) (Procedure Act applies to proceed­ings under the Medical Practice Act).  Second, Siddiqui argues the trial court erred by taking judicial notice of these statutes without giving him notice as required by the Procedure Act.  See 5 ILCS 100/10-40(c) (West 1992); 735 ILCS 5/8-1001 (West 1992) (circuit court's power to recognize a statute is treated as a matter of judicial no­tice).  Third, Siddiqui argues the circuit court erred by failing to define "the practice of medicine" specifically as part of its analysis.  

The complaint was sufficient, even though it did not cite the above sections of the Medical Practice Act.  The charges filed before an administrative agency need not be drawn with the precision required of pleadings in judicial actions.  They need only be drawn sufficiently so that the alleged wrongdoer is reasonably apprised of the case against him to intelligently prepare his defense.  
Rasky v. Department of Registration & Education
, 87 Ill. App. 3d 580, 585, 410 N.E.2d 69, 75 (1980).

The Procedure Act specifically requires a complaint to include "[a] reference to the particular Sections of the substan

tive and procedural statutes and rules involved."  5 ILCS 100/10-

25(a)(3) (West 1992).  However, this does not require a reference to every relevant section of the Medical Practice Act.  This would be impractical, since the parties may reasonably disagree on which sections are rele­vant.  The Procedure Act only requires the respondent be told the charge against him and the procedure being invoked, as they are reflect­ed in the statutory scheme.  The complaint informed Siddiqui he was being charged with allow

ing another to use his license (225 ILCS 60/22(A)(11) (West 1992)) and aiding another in the unli­censed practice of medicine (225 ILCS 60/22(A)(32) (West 1992)).  The complaint included cites to these two sections of the Medical Practice Act.  This was sufficient.

Sections 49 and 50 were properly raised for the first time in argument.  Section 49 does not define the practice of medicine, but sets out violations in holding oneself out to the public as being engaged in the diagnosis or treatment of an ailment or disease without a license.  See 225 ILCS 60/49 (West 1992).  This provision applies here only by analogy.  While section 50 defines the crime of practicing medicine without a license (225 ILCS 60/50 (West 1992)), it does not define the practice of medicine.  It merely provides a nonexhaustive list of some conduct that constitutes the practice of medicine.

Siddiqui argues the judicial notice provisions of the Procedure Act re­quired the Depart­ment to give him notice before it recog­nized sections 49 and 50 of the Medical Practice Act.  A circuit court's power to recognize a statute is treated as a matter of judicial notice.  735 ILCS 5/8-1001 (West 1992).  The Procedure Act allows an agency to take judicial notice of any matter of which a circuit court may take judicial notice.  However, the agency must first give the parties an opportunity to contest the materi­al so noticed.  5 ILCS 100/10-40(c) (West 1992).  Here, these sections were ex­pressly raised for the first time after the hearing, in the Department's re­sponse to Siddiqui's peti­tion for rehearing.

An evidentiary error in an admin­is­tra­tive pro­ceed­ing will not warrant reversal unless it preju­diced a party.  
Lebajo v. Department of Public Aid
, 210 Ill. App. 3d 263, 272, 569 N.E.2d 70, 76 (1990).  Siddiqui does not contest the content or appli­ca­bility of these sections of the Medical Practice Act.  Moreover, Siddiqui could and did file a reply brief after these sections were raised in the petition for rehearing.  Siddiqui argues he would have prepared his case differently had he known these provisions applied here.  Section 10-25(a)(3) of the Procedure Act, dis­cussed above, is designed to give parties the chance to prepare their legal arguments in advance of the hear

ing.  Section 10-40(c) is not.  Section 10-40(c) allows the agency to give the respondent notice of the materi­al during the hearing itself.  5 ILCS 100/10-40(c) (West 1992).

Siddiqui argues the hearing offi­cer, the Board and the Director erred by failing to define the "practice of medi­cine" explicitly as part of its analysis.  An order of suspension must contain a brief, concise statement of the grounds upon which the Department's action is based.  225 ILCS 60/40 (West 1992).  The Procedure Act also re­quires that a final deci­sion must include find­ings of fact and conclu­sions of law, separately stated.  5 ILCS 100/10-50(a) (West 1992).

The trial court was not required to define the practice of medi­cine specifically as part of its analysis.  Section 22 of the Medical Practice Act pro­vides the Depart­ment, upon recommen

dation of the Board, shall adopt rules that set forth stan­dards to be used in deter­mining several violations and terms under the Medical Practice Act.  225 ILCS 60/22 (West 1992).  It does not require the Department to define "the practice of medicine."  The Depart­ment is not required to set forth explic­it stan­dards defin­

ing the practice of medicine.  See 
Nelson v. Union Wire Rope Corp.­
, 31 Ill. 2d 69, 99, 199 N.E.2d 769, 786 (1964) (expression of one thing in a statute implies exclu­sion of others).  

The legis­la­ture did not define "the prac­tice of medi­

cine" in the defini­tions section of the Medical Practice Act (225 ILCS 60/2 (West 1992)).  A flexible definition of the practice of medicine is required in a statute intended to govern various healers from osteopaths (see 
People v. Frankowsky
, 371 Ill. 493, 494-95, 21 N.E.2d 582, 582-83 (1939)) to herb doctors (see 
People v. Mash
, 235 Ill. App. 314, 315-16 (1925)).

The Direc­tor's final decision adopted the findings and conclu­sions of the Board.  The Board, in turn, adopted the findings and conclusions of the hearing officer (with minor changes to the sanction).  After detailed find­ings summa­riz­ing the evidence given, the hearing officer's report states the legal conclu­sion that Siddiqui allowed Summers to use his license and aided and abetted Summers in the practice of medi­cine.  The report then highlights specific evidence support­ing this conclu­

sion, includ­ing Summers' credible testimo­ny; Ruby Hall's testi­mo­

ny that she saw Summers remove stitch­es; and Carol Underwood's testi­mo­ny that Summers gave her injec­tions and misdiagnosed her daughter and that she saw Summers write out prescriptions and sign Siddiqui's name.  

Implicit in this order is a definition of the practice of medicine which in­cludes these ac­tions.  It is enough if the agency indi­cates the path of the deci­sion.  The agency need not spell out every step in the reasoning, if it provides enough steps that the full course may be dis­cerned.  
Cf
. 
Brown v. Bowen
, 847 F.2d 342, 346 (7th Cir. 1988) (interpreting federal adminis­

trative law).  Given the flexible statutory definition of the practice of medicine, a more certain statement may not have been possible.

 Prior to the evidentiary hearing before the Department, Siddiqui filed a motion to dismiss the administrative complaint because it failed to allege specific dates upon which the miscon­

duct oc­curred.  Siddiqui argues the motion to dismiss should have been grant­ed.  A motion to dismiss a complaint is reviewed 
de
 
novo
.  
Vala v. Pacific Insur­ance Co.
, 296 Ill. App. 3d 968, 970, 695 N.E.2d 581, 582 (1998).

Siddiqui was enti­tled to a short and plain state­ment of the matters that were the basis for the claim.  5 ILCS 100/10-

25(a)(4) (West 1992); 68 Ill. Adm. Code §1110.70(a)(3) (1996).  Proce­dur­al due process does not require that the charges or complaint in an administra­tive proceeding be drawn with the same precision, refinements, or subtleties as pleadings in a judicial proceeding.  Rather, the charge need only reason­ably advise the respon­dent as to the charges so that he or she will intelligently be able to prepare a defense.  
Abrahamson v. Illinois Department of Profes­sional Regulation
, 153 Ill. 2d 76, 93, 606 N.E.2d 1111, 1119 (1992).

Due process is a flexible concept and requires only such procedural protections as funda­mental principles of justice and the particular situation de­mand.  See 
Abrahamson
, 153 Ill. 2d at 92, 606 N.E.2d at 1119.  In 
Talman v. Department of Registra­

tion & Education
, 78 Ill. App. 3d 450, 456, 397 N.E.2d 151, 155 (1979), a complaint that a physi­cian improp­er­ly dis­pensed medica­

tion was sufficient, even though it merely stated the physician dispensed certain amounts of one drug within an eight-month period and another drug within a one-year period.

Significantly, Siddiqui does not deny that Summers saw the patients in question, and argues, primarily, that his actions did not amount to the practice of medicine.  Siddiqui argues it was neces­sary to know the dates of treatment to determine from his records whether he was in his Belleville office when Summers alleg­ed­ly saw the patients, to subpoena pharmacy pre­scriptions for specific dates to determine who signed the pre­scription, and to cross-examine Summers effec­tively.  

  In determining whether the respondent has adequate notice, the court may consider the discov­ery and other materi­als avail­able to the respon­dent.  See 
Secrest v. Department of Correc­tions
, 64 Ill. App. 3d 458, 460, 381 N.E.2d 367, 368 (1978).  The complaint provided Siddiqui with a list of patients whom Summers had been allowed to diag­nose and treat.  Summers testified keeping files regard­ing patients was part of his job.  Summers testi­fied that every time he saw a patient, a billing form was pre­pared, and he indicated on the form that it was him who saw the patient.  Siddiqui could obtain the dates these pa­

tients were seen by examining his own patient files.

Siddiqui argues that without the dates of treatment, he could not respond to Underwood's testimony regarding billing records.  The inves­ti­ga­tive report provid­ed to Siddiqui during discovery stated Underwood first saw Siddiqui in May or June 1994, but did not start seeing Summers until August 1994.  Underwood had testified on direct examination that Siddiqui billed her insurance company for Summers' examining her and her daughter prior to this date, in May 1994.  The hearing officer's findings state the visit occurred in May 1994.  Siddiqui argues that, because this was before Underwood first saw Sum­mers, he had no reason to examine billing records relating to this visit.  Howev­er, the billing records presented for this visit were dated May 1995.  Apparently, Underwood simply misspoke, and the hearing officer used the wrong date.  If the May 1995 date is used, no con­flict exists between the infor­ma­tion provided to Siddiqui prior to trial and Underwood's testimo­ny based on the billing re­

cords.   

Siddiqui also argues that testimony regarding the May 1995 visit should have been barred due to discovery violations and unfair surprise.  Siddiqui's brief contains nothing more than two short, conclusory statements on this point, with no argument or citation to author­ity.  Therefore, the issue is waived on appeal.  177 Ill. 2d R. 341(e)(7).

Siddiqui argues the Department erred in finding Summers was practicing medicine.  The Depart­ment has the burden of proving its case by clear and convincing evidence.  68 Ill. Adm. Code §1110.190(a) (1996).  However, on review, the findings and conclu­sions of a hearing officer on questions of fact are consid­

ered to be 
prima
 
facie
 true and correct.  A reviewing court may set aside those findings only when they are against the manifest weight of the evidence.  A decision is contrary to the manifest weight of the evidence only where the opposite conclu­sion is clearly evident.  
Maun v. Department of Professional Regulation
, 299 Ill. App. 3d 388, 401-02, 701 N.E.2d 791, 801 (1998).

Siddiqui argues that not every act performed by a physician constitutes the practice of medicine.  Duties such as changing bandag­es, administering injections, drawing blood, and taking blood pres­sure are often performed by nonphysicians.  

However, the Department could reasonably conclude from Summers' testimony that Summers diagnosed colds and pre­scribed medica­tions.  Summers made final decisions as to the treatment of patients by prescribing medications, even if he only repeated prior prescriptions.  Compare 
Biogenetics, Ltd. v. Department of Public Health
, 89 Ill. 2d 92, 97-98, 431 N.E.2d 1042, 1044 (1982) (physician's assistant who performed preliminary pelvic examina­

tions to screen patients was not practicing medicine).

Siddiqui argues the record does not support the hearing officer's conclusion that Summers treated and diagnosed Bliven.  Summers' uncontradicted testimony was that he refused treatment to Bliven and told him he was not a doctor.  Siddiqui also notes the record does not support the finding that Summers treated and diagnosed Bell, who merely received a refill of a medica­tion.  However, any error was harm­less.  The record amply sup­ports a finding that Summers treated and diag­nosed other patients on several occasions.

Siddiqui argues he may delegate authority to office person­nel.  The fact that licensed professionals other than physicians may be permitted to perform certain medical proce­dures under the supervision of a licensed physician does not render the perfor­mance of those same procedures by unsupervised and unli­

censed individuals outside the ambit of the Medical Practice Act.  
People v. Bickham
, 250 Ill. App. 3d 141, 146, 621 N.E.2d 86, 89 (1993).

The Department could reasonably conclude that much of Summers' conduct was not commit­ted under the direction or super­

vision of Siddiqui.  Summers testified he diagnosed patients when Siddiqui was not present.  Underwood, Hall, and Summers testi­fied Summers wrote pre­scriptions.  Underwood testified she re­ceived injections from Summers without Siddiqui pres­ent.

Siddiqui argues Summers was acting within his authority as a licensed pharmacist's assistant.  However, Summers admitted he did not have a profession­al license that would allow him to prescribe medication or treat patients.  While the Pharmacy Practice Act of 1987 pro­vides a pharmacist may advise or counsel patients on the use of drugs or devices and provide health information related to them (225 ILCS 85/3(d) (West 1992)), the pharmacist's role does not extend to decid­ing whether to pre­

scribe drugs.  This requires a medical judgment as to the needs of the patient, the effect of the drug, and the effective­ness of other types of treatment.  See 
Suarez v. Pierard
, 278 Ill. App. 3d 767, 770-71, 663 N.E.2d 1039, 1042-43 (1996).

Siddiqui argues the Department erred in finding Summers credible and relying upon his testimony.  Siddiqui notes Summers had an incentive to give the Department incriminating information to get his professional license back.  Siddiqui points to alleged inconsistencies in Summers' testimony.  

Upon judicial review of an administrative hearing officer's decision, a reviewing court does not reweigh the evidence or assess the credibility of witnesses.  The hearing officer, as the trier of fact, evaluates all evidence, judges the credibility of witnesses, resolves any con­flicts in the evidence, and draws reasonable inferences and conclusions from the facts.  
Maun
, 299 Ill. App. 3d at 401, 701 N.E.2d at 801.

The hearing officer knew Summers' license was under scrutiny by the Department and explicitly considered this in evaluating his testimony.  Summers' failure to remember the name of anyone he diagnosed does not render his testimony that he diag­nosed pa­tients incred­ible as a matter of law.  Nor do the other alleged inconsistencies in Summers' testimony.  

Siddiqui argues the Department erred in finding he knew of Summers' actions.  Because this is an issue of fact, the Department's decision will not be reversed unless it is against the manifest weight of the evidence.  See 
Maun
, 299 Ill. App. 3d at 401-02, 701 N.E.2d at 801.  Siddiqui points to the testimony of an employee in Siddiqui's office that Summers' actions went on without his knowl­edge.  Howev­er, Summers testified he treated and diag­nosed patients in Siddiqui's pres­ence, and he billed hours to Siddiqui's practice.  According to Summers, he used prescription forms presigned by Siddiqui.  Underwood testi­fied Siddiqui knew Summers had diag­nosed her daugh­ter and pre­scribed medica­tion.  Again, it is the role of the Department to resolve conflicts in testimony.  See 
Maun
, 299 Ill. App. 3d at 401, 701 N.E.2d at 801.

Ruby Hall testified Summers attempted to remove stiches from her husband's back.  Siddiqui argues the Depart­ment commit­

ted revers­ible error by failing to admit the letter from Dr. Wanless, a recon­structive surgeon, suggesting Willie Hall did not receive stitches during his surgery.  Busi­ness records, including medical records, are admis­si­ble in pro­ceed­ings before the Depart­

ment.  The record must be a memorandum, report, record, or data compila­tion.  68 Ill. Adm. Code §1110.200(a) (1996).  

Siddiqui's counsel characterized the letter as a report, whereas the hearing officer characterized it as mere corre­spon­dence.  The appellate record does not include a copy of the letter from Wanless.  When omis­sions in the appellate record result in ambiguities as to the record, all doubts are re­solved against the appellant.  See 
Haudrich v. Howmedica, Inc.
, 169 Ill. 2d 525, 546-47, 662 N.E.2d 1248, 1258 (1996).  There­fore, the hearing officer's ruling the letter is not a memoran­dum, report, record, or data compilation is af­firmed.

Siddiqui argues the sanction in this case was improper.  Siddiqui's license to practice medicine was suspended for six months followed by a year of probation.  While a review­ing court must defer to the admin­is­tra­tive agency's exper­tise and experi­

ence in determin­ing what sanction is appro­priate to protect the public interest, a review­ing court has authority to review a sanction imposed.  
Obasi v. Department of Profes­sional Regula­

tion
, 266 Ill. App. 3d 693, 704, 639 N.E.2d 1318, 1325
 (1994).  A sanction will be affirmed unless it constitutes an abuse of discretion.  
This occurs when the depart­ment imposes a sanc­tion that is (1) overly harsh in view of the mitigating circum­stanc­es or (2) unre­lated to the purpose of the stat­ute.  
Pundy v. Depart

ment of Professional Regulation
, 211 Ill. App. 3d 475, 488, 570 N.E.2d 458, 467 (1991).

Siddiqui argues review of the sanction is impossible because the Depart­ment failed to state a reason for imposing the revoca­tion.  The Medical Practice Act does not explicitly require the Department to enter any partic­u­lar findings before imposing a sanc­tion.  Moreover, the Board adopted the findings of the hearing officer, and imposed almost the same sanc­tion (again, with minor changes not relevant here).  The hearing officer gave an exten­sive summary of the evi­dence pre­sented and concluded Siddiqui knew of Summers' activi­ties or he had "stuck his head in the sand" and avoided the obvi­ous by not hiring an office man

ager, not spend­ing time in the Belleville office, and allowing visits with Summers to be billed.

The purpose of the Medical Practice Act is to protect the public health and welfare from those not qualified to prac­

tice medicine.  
Potts v. Illinois Department of Registration & Education
, 128 Ill. 2d 322, 333, 538 N.E.2d 1140, 1144-45 (1989).  The sanction in this case was related to this purpose.  It discour­aged Siddiqui from assist­ing Summers, an unqualified person, in practicing medi­cine.  

Siddiqui argues the sanction was too harsh.  The Depart­ment could reason­ably conclude Siddiqui (1) provided an office and keys to Sum­mers; (2) called him doctor in front of pa­

tients; (3) provided him with signed prescrip­tion forms; (4) knew he had diag­nosed Tracee Underwood; and (5) either knew or was wilful­ly blind to the fact that Summers had diagnosed or treated several other pa­tients.

Siddiqui notes that Dr. Aleksadi Krum and Dr. Ruben Incoencio did not receive penalties this harsh for similar viola­

tions of the Medical Practice Act.  According to Siddiqui's motion to stay the agency decision, both Krum and Incoencio were given two years proba­tion and a $1,000 fine for aiding and abetting the unli­censed practice of medicine (97-1816-LEG, Consent Order entered November 25, 1997; 96-5440-LEG, Consent Order entered October 11, 1996).  

The supreme court has dis­cussed a special need for unifor­mity or consistency in sanc­tions in disciplinary proceed­

ings.  
In re Wigoda
, 77 Ill. 2d 154, 163, 395 N.E.2d 571, 575 (1979).  Accord­ingly, the hearing officer may consider sanc­tions imposed in similar cases.  
Singh v. Depart­ment of Profes­sional Regula­tion
, 252 Ill. App. 3d 859, 870, 625 N.E.2d 656, 664 
(1993); 
Arceo v. Selcke
, 226 Ill. App. 3d 166, 171-72, 589 N.E.2d 675, 679 (1992).  Still, each case must be considered on its merits (
In re Spencer
, 68 Ill. 2d 496, 501, 370 N.E.2d 210, 213 (1977)) and it is for the Depart­ment to deter­mine the appro­pri­ate sanc­tion in each case (
Dharmavaram v. Department of Professional Regulation
, 216 Ill. App. 3d 514, 529, 576 N.E.2d 361, 371 (1991)).  

Siddiqui has failed to show the sanctions against Krum and Incoencio require a different result here.  In 
Dharmavaram
, 216 Ill. App. 3d at 529, 576 N.E.2d at 371, an argument that sanc­tions against a doctor denied him equal protection was reject­ed when the doctor merely cited the outcomes of five other cases against other doctors, without reference to the facts of each case.  Similarly, here, Siddiqui merely cites the outcome in these cases with no discussion of the facts supporting the sanctions.  Moreover, cases against Krum and Incoencio were resolved by consent order.

Finally, Siddiqui argues the Department violated the Code when it allowed the Board to review the hearing officer's report without notify­ing him.  The Code provides:

"All investigative procedures, informa

tion arising out of the investigation of complaints, activities of the Complaint Commit­tee, and informal conferences shall be confi­dential.  All other proceedings and documents beginning with the filing of a formal com­plaint shall be open to the pub

lic."  68 Ill. Adm. Code §1285.310(a) (1996).

Siddiqui argues he was deprived of a public proceeding before the Department because it decided his case before he was notified and had a chance to respond to the hearing officer's report.

The Department counters that this section of the Code does not require it to notify the respondent before for­warding a copy of the hearing officer's report to the Board.  An agency's interpretation of its own rules will be accorded defer­ence unless it is clearly erroneous, arbitrary, or unreason­able.  An agency's application and construction of a rule will only be reversed if plainly erroneous.  
Central Illinois Public Service Co. v. Illinois Commerce Comm'n
, 243 Ill. App. 3d 421, 428, 610 N.E.2d 1356, 1361-62 (1993). 

The Medical Practice Act merely provides that the hearing officer shall report to the Board within 30 days after receipt of the record.  225 ILCS 60/35 (West 1992).  It does not explicitly require service of the report.  Elsewhere in the Medical Practice Act and the Procedure Act, when an agency is re­

quired to serve a proposed decision on a respondent and give him a chance to respond, this re­quire­ment is imposed explic­it­ly.  See 225 ILCS 60/40 (West 1992); 5 ILCS 100/10-45 (West 1992). 

For all of the above reasons, we affirm.

Affirmed.

KNECHT, P.J., and GARMAN, J., concur.